### Gorman *v.* American Metal Co. et al., Appellants.

*Workmen's compensation—Injuries to fingers—Claim for loss of hand.*

In a claim under the Workmen's Compensation Act, it appeared that the claimant, as the result of an accident, lost a portion of each of the middle, third and little fingers. It further appeared that the thumb, index finger and palm were unimpaired and that the hand was useful for many purposes.

Under such circumstances an award, for the permanent loss of the use of the hand, will be reversed.

In such a case, it is not sufficient that the claimant lost the use of his hand for the particular employment in which he was engaged; the use must have been lost for all practical purposes.

Argued October 14, 1925. Appeal No. 132, October T., 1925, by defendant, from judgment of C. P. No. 1, Philadelphia County, March T., 1924, No. 813, in the case of Frank Gorman v. American Metal Co. and Maryland Casualty Co., Insurance Carrier and intervening defendant. Before PORTER, HENDERSON, TREXLER, KELLER, LINN and GAWTHROP, JJ. Reversed.

Appeal from award of Workmen's Compensation Board. Before TAULANE, J.

The facts are stated in the opinion of the Superior Court.

The court affirmed the award of the Workmen's Compensation Board.  Defendant appealed.

*Error assigned* was the decree of the court.

*Louis Wagner,* for appellant.—The claimant did not lose the use of his hand within the meaning of Section 306-C of the Workmen's Compensation Law:  Lente v. Lucci, 275 Pa. 217; Fillip v. Cramp, 80 Pa. Superior Ct. 68; Massett v. Ammorford Coal Co., 82 Pa. Superior Ct. 579; Quinn v. American Ship Bldg. Co., 77 Pa. Superior Ct. 304; Kirwin v. American Ry. Ex. Co., 273 Pa. 134.

*Seymour M. Heilbron,* for appellee.

Opinion by Henderson, J., February 26, 1926:

The petitioner's right hand was injured while he was employed by the American Metal Company, as a result of which he sustained the amputation of the middle finger between the distal and the proximal joints, an amputation of the third finger between the knuckle joint and the proximal joint, and an amputation of the little finger between the distal and proximal joints as found by the Referee.  The accident occurred July 20, 1922.  An agreement for compensation was made by the claimant.  On January 10, 1923, he presented a petition for a modification of the agreement to permit him to prove the loss of the use of his hand and on this proceeding the Referee and the Board found in favor of the application and awarded compensation for a permanent loss of the use of his hand.  On appeal this action was sustained by the court.  Our inquiry now is whether the evidence sustains the award.  The injury to the plaintiff was caused by a stamping machine.  The thumb and palm were not injured and there was only a slight injury at the end of the index finger.  Two phy-

sicians testified as to the extent of the injury and its effect on the use of the hand. Dr. Robinson said the claimant had the full use of the index finger and thumb. In answer to the question has he lost the use of that hand as a punch press operator, he answered I figured that he had lost the use of that hand as a punch press operator, but only for use in that kind of work. He testified that he could do clerical work or light laboring work. In answer to the question what is the percentage of his permanent disability based on a normal hand, the answer was ''I would say 60 per cent lost.'' He further testified that in his opinion he had lost 75 per cent or more of the grasping power of his hand and the same amount of pulling power. He also said that the thumb and index finger were the most important digits of the hands. Dr. Blakeslee testified that with the thumb and index finger on his hand ''he has over the function of the fingers about 60 per cent.'' In his opinion the remaining fingers were practically useless. He thought the claimant would ''be handicapped when it comes to competition. He couldn't keep up with the men that had the other fingers.'' He thought he had no pulling power, but there was nothing wrong with the index finger nor with the thumb. Giving the uninjured hand the value of 100 he was of the opinion that the applicant had 60 per cent of the hand remaining. When considering the use of the hand however, he thought he did not have 60 per cent of the industrial use ''because you must consider working conditions and competition and all the features that go into industrial use......From an anatomical standpoint he has 60 per cent.'' The hand ''is of no practical use when it comes to going out on the open market, the handicap is too great.'' In answer to the question whether the hand as it is was useless to him in any pursuit that he might follow, the witness said ''I do, taking into consideration the man's social standing and education, as he is, I would say he has lost the indus-

trial use of that hand." His opinion was that the man was disabled on the basis of a normal hand 40 per cent, and that he had lost the whole industrial use of the hand as a worker on a punch press. It is not sufficient to entitle the party to the compensation claimed that he has lost the use of his hand for the particular employment in which he was engaged; the use must have been lost for all practical purposes. Compensation was allowed for the loss of an arm in Kerwin v. American Ry. Ex. Co., 273 Pa. 134, where the injury was a dislocation and fracture of the shoulder, but it appeared there affirmatively that the arm could not be used. The healing process resulted badly, an operation was necessary, and the final consequence was, as stated by the court, that the claimant was not only unable to pursue the occupation he followed at the time of receiving his injury, but was disabled from performing other manual work requiring the use of his arm. The same view was expressed in Chovic v. Pittsburgh C. S. Co., 71 Pa. Superior Ct. 350, where it was said by Judge PORTER "whether a man has lost the use of a hand depends upon whether the hand has become useless in any employment for which that particular man is mentally and physically qualified." The question for the consideration of the Referee and the Compensation Board was therefore whether the evidence fairly established a total loss of the use of the hand. In considering that question they based their conclusions largely on the testimony of Dr. Blakeslee, but an examination of his evidence shows that his opinion was based on the theory of the "handicap" to which the applicant would be subjected in industrial competition. That handicap according to the witness would be subject to variations depending on economic conditions. In concluding that the hand was not valuable for any pursuit the opinion of the witness was based on the consideration of the "man's social standing and education." This introduces a subject not surgical nor

anatomical, but a theory suggested by the disadvantage which one labors under who has an impairment of physical efficiency.   Every partial disability presumably causes a diminution of industrial capacity and is to a greater or less degree what is described by the witness as a handicap, but neither of the medical witnesses denies that with the thumb, index finger and palm unimpaired, the hand is useful for many purposes, and we do not find in the whole evidence such proofs of its total uselessness as to warrant the conclusion that it has been totally lost for all practical purposes.   The claimant himself stated that he has been at work on a tapping machine; that he uses the right hand to push the handle up, a lever which is used in operating the machine, and it is obvious that it has a considerable measure of usefulness.   In Fillip v. Wm. Cramp & Sons, 80 Pa. Superior Ct. 68, we held in an opinion by Judge LINN that while there was evidence that the claimant could not perform a certain kind of work which he performed as a machinist, such limited disability did not bring the applicant within the provisions of Clause C of Sec. 306.   The evidence presented does not justify the conclusion that the petitioner is wholly disabled as to the use of his hand within the meaning of the statute.   While we sympathize with the misfortune of a claimant and would give a liberal construction to the statute in relief of those intended to be benefitted, we are not at liberty to extend its application beyond the limits fixed by its terms.   We are therefore constrained to reverse the judgment.

The judgment is reversed.