Morrow, Appellant, *v.* James S. Murray & Sons et al.

278

Argued April 10, 1939.

Before KELLER, P. J., CUNNINGHAM, BALDRIGE, STADTFELD, PARKER, RHODES and HIRT, JJ.

*Edward J. I. Gannon,* of *Hazlett, Gannon & Walter,* for appellant.

*Karl E. Weise,* with him *Allen G. Lynch,* for appellee.

OPINION BY RHODES, J., June 28, 1939:

Claimant was awarded compensation by the referee for the permanent loss of the use of his left hand incurred in the course of his employment. The referee's findings of fact, conclusions of law, and award were affirmed by the Workmen's Compensation Board. The court below held that claimant was not in the course of his employment when injured, and sustained defendant's appeal. In his appeal to this court claimant questions the correctness of that ruling, and the judgment for defendant.

Appellant was employed by appellee employer as a truck driver. He was supposed to report for duty at 7:30 a. m. every morning at the garage where the trucks were kept, unless instructed to the contrary on the previous day. A specific truck was assigned to him. On the day in question he arrived at the garage about 7:15 a. m. Before entering the garage to get his truck, appellant and a fellow employee, Clements, engaged in setting off two or three firecrackers. At 7:30 a. m. appellant removed his truck from the garage, and parked it in the street in front of the garage. After doing so he remained seated on the driver's side, and Clements, having joined him, was seated next to him on the right. Clements lit a firecracker which he attempted to throw through the window next to appellant. However, in some manner the firecracker fell inside appellant's shirt. He jumped out of the truck and attempted to remove it, but before he could do so it exploded, causing severe injuries to his left hand. The time was about 7:50 a. m.

Not considering for the moment the question arising from the presence of the firecrackers, it is clear that there was competent evidence to support the conclusion that appellant was otherwise in the course of his employment when he was injured. Appellant testified: "Q. What were your duties when you reported for work? A. When we know what we are going to do the next

day we take our trucks and go to the job but this day we didn't know what we were to do, we had to wait for someone to tell us where to go and what to do. Q. When you didn't know the day before what you were to do, what was your duty as to the truck? A. We always got our trucks ready so that we are ready to go. Q. By that you mean — A. — take them out of the garage ready to go. ...... There was mornings when we didn't know what to do, we were to get the trucks ready, what would be done to them and be ready to go when one of the bosses come to tell us what to do. Q. By getting your trucks ready what did you do? A. Check the oil and the gas and the water, and take them out of the garage and have them ready to take off. Q. Your truck was to be in shape by 7:30 for you to proceed to the job? A. Yes, sir."

Appellee employer testified: "They were supposed to report between 7:00 and 7:30 at the garage, and it depended on where we was working as to where they was to work; ...... we paid them from 7:30 ...... My sons runs the shovel and they generally met them there and told them where to go to. ...... Q. If they weren't given any orders to come out the night before they would come out the following morning? A. Yes, sir. Q. And instructions would then be given them as to the work? A. Yes, sir. ...... Q. And in the absence of any orders on July 6th you expected these men to report on July 7th in the morning, ready to go to work? A. Yes, sir. Q. And there was work on the morning of July 7th? A. Yes, sir. Q. And the only reason they hadn't actually started to work on the job that morning was because the shovel-man was late that morning? A. Yes, sir, he was about fifteen minutes late that morning. Q. Were the truck drivers as a part of their work expected to have their trucks ready to go to work at 7:30 o'clock in the morning? A. Yes, sir."

We think this testimony demonstrates that the procedure followed by appellant on the morning in ques-

tion was in obedience to the express orders of his employer, and the conclusion that he was in the course of his employment properly follows.

However, it was the view of the court below that because appellant "brought with him at the time he reported for work, a number of firecrackers which, according to his testimony, had been purchased for a celebration that was held on July 5, 1937, the Fourth of July having fallen on Sunday, last year," ...... and that by doing so he injected into the employment a dangerous instrumentality, without the employer's knowledge or consent, which instrumentality was used "in co-operation with a fellow-employee, for their own pleasure and benefit only and before any responsible officer of the [employer] had arrived at the scene of the accident," he took himself out of the course of his employment. The case of *Beamer v. Stanley Co. of America et al.*, 295 Pa. 545, 145 A. 675, is cited as controlling under the circumstances. Whether, if the evidence supported such a premise as stated by the court below, the conclusion reached would be a proper one need not be decided, because, in our opinion, the record does not support the premise. It does not show how the firecrackers came upon the scene. The only testimony relative thereto is that of appellant who was asked: "Q. Where did you get these firecrackers? A. They were from a re-union that we had the day before. Q. And you had these firecrackers left over? A. Yes, sir." Neither the referee nor the board made a finding on the point, and we cannot say that the testimony was so clear as to compel the inference that appellant brought the firecrackers with him to the garage, or even to necessitate a finding as to how the firecrackers happened to be there. Cf. *Garrahan v. Glen Alden Coal Co.*, 135 Pa. Superior Ct. 307, 5 A. 2d 437.

Furthermore, the uncontradicted testimony of appellant is that, although he had been engaged in setting off the firecrackers prior to boarding the truck, he did

not do so thereafter. Even if we concede, for the sake of the argument, that setting off the firecrackers would have taken appellant out of the course of his employment, such activity on his part had been abandoned when the accident occurred. The situation thus created was no different than that which would have existed if, while driving his truck along the street, he had been injured by a firecracker thrown by a stranger.

It was not shown that appellant was in exclusive possession of the firecrackers, and the use of them to his injury by a fellow employee did not take appellant out of the course of his employment. The facts of the instant case differ from those of *Beamer v. Stanley Co. of America et al.,* supra, where the employee was killed by a shot from a revolver in his own hand, and which he had brought upon the premises although the nature of his employment did not require it. The Supreme Court there said, at page 547: "Deceased met death accidentally while on the premises, but as the result of a commission of an act which bore no relation to his employment." Here, as we have indicated, appellant was sitting in his truck awaiting instructions from his employer, as he had been required to do, and if the act of setting off the firecracker "bore no relation to his employment" it was not committed by him.

Appellee contends that, in any event, "the evidence does not support the referee's and the board's finding that the claimant had suffered permanent loss of the use of his left hand, and at the most he has suffered only the loss of the first two fingers." Whether appellant has lost the use of his hand depends upon whether it has become useless in any employment for which he is mentally and physically qualified. *Chovic v. Pittsburgh Crucible Steel Co.,* 71 Pa. Superior Ct. 350, 353. Appellant was employed as a truck driver, and there is no evidence as to his ability to perform other work.

Dr. C. M. Hobaugh, an industrial surgeon, who treated claimant for his injuries and performed the

necessary surgery, testified: "A. (Examining Claimant's hand). There is a deformity and ankylosis of the first joint of the first digit. There is a partial ankylosis of the carpometacarpal joint, first digit. There is an amputation of the second metacarpal one-half inch. There is an amputation of the third digit proximal to the second joint; there is a partial ankylosis of the carpometacarpal joint, third digit. The fourth digit there is a partial ankylosis of the first joint allowing no flexion. There is a partial ankylosis of the second joint allowing limited flexion. There is a scar extending from the dorsal surface of the hand about its middle one and half inches distal to the wrist joint extending through the web between the first and second digits into the palm and proximal to within one-half inch of the wrist. There is a contracture of the palmar tissues. Several smaller and lesser important scars on the dorsal and palmar surfaces. Q. Will you state whether or not the normal function of the wrist has in any way been affected as a result of this injury? A. A partial limitation of dorsiflexion of the wrist. Q. Will you state what in your professional opinion this injury as you now describe it in its present condition has upon the industrial use of Robert Morrow's left hand? A. It seems to me that there is full industrial loss of that hand." He stated further that appellant had no substantial grip in his left hand because of the ankylosis of the joints of the remaining fingers and thumb, except the little finger. The last, although practically unimpaired, adds nothing to the use of the hand "because there is no apposition of the little finger with anything excepting the thumb which is useless." To describe the condition of appellant's hand in the language of the layman, he has lost the index finger entirely, and all but a small stump of the middle finger; the thumb and the ring finger are so stiffened as to be useless.

The fact that appellant resumed driving a truck for the same employer two months after the accident, at

the same hourly rate of pay, did not bar an award for the permanent loss of the use of his hand. See *Savolaine v. Matthew Leivo & Sons et al.*, 131 Pa. Superior Ct. 508, 513, 200 A. 243. Under section 306 (c) of the Workmen's Compensation Act of June 2, 1915, P. L. 736, as amended April 13, 1927, P. L. 186, 77 PS §513, the right of compensation, regardless of the degree of disability, is measured by the extent of the injury. By this section a fixed amount is to be paid without considering, but including, all incapacity to labor that may be connected therewith, whether such incapacity be total, partial, or no incapacity at all. *Lente v. Luci*, 275 Pa. 217, 220, 119 A. 132; *Conley v. Allegheny County*, 131 Pa. Superior Ct. 236, 249, 200 A. 287. See, also, *Kerwin v. American Railway Express Co.*, 273 Pa. 134, 137, 116 A. 655. Appellant's injured hand was in evidence, and it, together with the testimony of the expert witness, was sufficient to justify the award. *Jones v. Heintz Mfg. Co.*, 104 Pa. Superior Ct. 30, 32, 159 A. 73. It appears that, for all practical purposes, the use of appellant's hand has been lost. There was competent evidence to support the finding that appellant had permanently lost the use of his left hand. *Chovic v. Pittsburgh Crucible Steel Co.*, supra.

Assignment of error is sustained.

Judgment of the court below is reversed, and the record is remitted to that court in order that judgment may be entered for claimant on the award.