Marvin Wall, Appellant, *v.* Workmen's Compensation Appeal Board, Ward Candy Company and Travelers Insurance Company, Appellees.

Argued December 6, 1973, before Judges CRUMLISH, JR., KRAMER and BLATT, sitting as a panel of three.

*Harry L. Clark,* for appellant.

*Joseph J. Murphy,* with him *Ernest Ray White* and *Murphy, Murphy & Murphy,* for appellees.

OPINION BY JUDGE KRAMER, February 26, 1974:

This is an appeal filed by Marvin Wall (Wall) from an adjudication of the Workmen's Compensation Appeal Board (Board), dated April 12, 1973, in which three of the referee's findings of fact and one of the referee's conclusions of law were vacated and six new findings of fact and one new conclusion of law were added. The Board reversed the referee's conclusion that the injuries to Wall's right hand resulted in the functional loss of the entire right hand and substituted its own conclusion that Wall was entitled to compensation only for the loss of his third and fourth fingers. The Board therefore reduced the compensation due Wall and cred-

ited certain compensation benefit payments to Wall against the award.

Wall was employed by the Ward Candy Company (Ward) from August 18, 1969 as a laborer, whose job entailed the shoveling of chocolate into a grinding machine which he operated. On November 10, 1970, the grinding machine became jammed, and Wall attempted to clear the clogged material. While his right hand was inside the machine, someone started the mechanism and Wall's right hand became caught in the machine, resulting in the mutilation and amputation of part of his hand. Wall became unconscious and was taken to a hospital where he stayed for the next 32 days.

The expert medical testimony indicates that as a result of the accident the third and fourth fingers of Wall's right hand were completely amputated. He sustained loss of bone structure of the distal margins of the hamate bone, as well as the entire loss of the pisiform bone, with portions of the hamate to which it is attached. In addition, there was anatomical disarrangement in the hand in that there was a separate digit comprising the distal two-thirds of the metacarpal and the attached phalanges lying loose and separate along the phalanges of the third digit. The photo exhibits entered into evidence clearly disclose a mutilation with permanent scarring of Wall's right hand. The record discloses that 13 days after the accident Wall signed a typed compensation agreement which described the injury as the amputation of two fingers. The agreement does not mention the other injuries disclosed at the hearing in this matter. Wall was paid benefits at the rate of $60 per week for 13 weeks. This compensation apparently was discontinued because on January 12, 1971, Wall filed a claim petition for workmen's compensation benefits for the loss of his entire right hand. This petition was dismissed October 12, 1972 by adjudication of a referee because it had been errone-

ously filed while the prior agreement (dated November 23, 1970) was in effect. In June of 1971, Wall filed a petition to review the provisions of the existing compensation agreement for the reason that the agreement failed to disclose the extent of Wall's injuries. A hearing was held on this petition for review at which the only evidence presented was by Wall and his expert medical witness. After giving the history and diagnosis, the expert medical witness was asked for his professional opinion on the condition of Wall's hand insofar as his ability to use it was concerned. The doctor replied, "This man has suffered the total loss of the use of the hand for practical purposes for reasons contained on the present complaints." Wall testified that he could not do the same work that he had been performing at the time of the accident, and that Ward had given him, upon returning to work on March 18, 1971, a different job involving the stacking of candy boxes onto "skids" which were then lifted by a powered hi-lift machine. Wall stated that he could use a shovel, but not as effectively as before the accident because his impaired right hand lacks endurance and strength. Wall now has difficulty picking things up with his right hand. He cannot engage in sports, as he had prior to his accident; he cannot open cans or unscrew bottles; he can only use tools with his left hand. He cannot work as fast as others doing the same job because of his impaired right hand. He has to stop work from time to time to compensate for the tired feeling resulting from his injuries. Incidentally, Wall was returned to work at $3.04 per hour compared to $3.16 per hour at the time of the accident, and this fact will affect our final order.[1]

---

[1] *See* 77 P.S. §513(24), which states: "Permanent loss of use of a hand . . . shall be considered as the equivalent of the loss of such hand. . . ."

Based on the record made, the referee found that there was a permanent loss of the use of the entire right hand and made an award accordingly. Upon appeal, the Board, without receiving any additional testimony or evidence, reversed the findings and conclusions of the referee. The Board apparently agreed with counsel for Ward that because Wall can still write with his right hand and can still eat, clothe himself, and stack boxes, Wall has not lost the use of his right hand "for all practical intents and purposes."

Although initially Wall raised a question concerning the granting of credit against the award for the original 13 weeks of compensation payments made to him, that issue is mooted by virtue of the result of this case before this Court. Therefore the only question before us is whether the Board committed an error in reversing the referee's adjudication that Wall should be compensated for the loss of the use of his right hand.

Subsequent to the filing of the Board's adjudication, this Court on June 11, 1973, in *Universal Cyclops Steel Corp. v. Krawczynski*, 9 Pa. Commonwealth Ct. 176, 305 A. 2d 757 (1973),[2] decided that because the Workmen's Compensation Act, Act of June 2, 1915,

---

Subsection (25) states: "In addition to the payments hereinbefore provided for permanent injuries of the classes specified, any period of disability necessary and required as a *healing period* shall be compensated in accordance with the provisions of this subsection. The healing period shall end (I) when the claimant returns to employment *without impairment in earnings,* or (II) on the last day of the period specified in the following table, whichever is earlier: for the loss of a hand 20 weeks. . . . This compensation shall not be more than $60.00 per week. . . . When an employe works during the healing period, his wages and earning power shall be as defined in this act and he shall not receive more in wages and compensation combined than his wages at the time of the accident as defined in section 309. . . ." (Emphasis added.)

[2] Application to the Pennsylvania Supreme Court for allocatur denied September 5, 1973.

P. L. 736, as amended, 77 P.S. §1 et seq. (with specific reference to Section 423 [77 P.S. §854]) had been amended by Acts Nos. 12 and 61 of 1972, a major change had been made in the Board's scope of review. In *Universal Cyclops, supra,* we held that the Board was restricted in its adjudications subsequent to May 1, 1972 (when it has not taken additional testimony or evidence) to consider only the competence, rather than the credibility of the evidence presented to the referee. In effect, we held that the credibility of the evidence, where the Board does not receive additional testimony or evidence, is for the referee to determine. We held that this change in the Board's scope of review was a procedural matter rather than substantive and that it therefore applied to existing litigation.

In this case, the party having the burden (Wall) prevailed in the proceedings before the referee; therefore our scope of review is limited to a determination of whether the referee's findings and conclusions are supported by substantial evidence. If the referee's findings are supported by substantial evidence, the Board cannot reverse those findings unless it takes additional evidence. *See Universal Cyclops, supra. See also Hoy v. Fran Lingerie,* 9 Pa. Commonwealth Ct. 542, 308 A. 2d 640 (1973), *Maston v. Union Mining Co.,* 9 Pa. Commonwealth Ct. 586, 309 A. 2d 67 (1973). Ward agrees in this case that the issue of whether an employe has suffered the loss of the use of his hand is a question of fact rather than a question of law.

Interestingly there have been similar cases in this field of law in this Commonwealth. In *Morrow v. James S. Murray & Sons,* 136 Pa. Superior Ct. 277, 7 A. 2d 109 (1939), a truck driver employe lost two fingers of his left hand. After recovering from the accident, he returned to truck driving, and the Court held that his resumption of driving a truck "did not bar an award for the permanent loss of the use of his hand."

In that case, the medical expert stated, "It seems to me that there is a full industrial loss of that hand." The Court concluded: "Appellant's injured hand was in evidence, and it, together with the testimony of the expert witness, was sufficient to justify the award. . . . It appears that, *for all practical purposes,* the use of appellant's hand has been lost." (Emphasis added.) 136 Pa. Superior Ct. at 284, 7 A. 2d at 112. In *Hager v. Norristown Magnesia Asbestos Co.,* 87 Pa. Superior Ct. 159 (1926), the employe lost a thumb and two-thirds of the proximal metacarpal bone. There was scarring of the rest of the hand. In that case, the employer argued that the employe was able to work after the accident and therefore not entitled to compensation benefits. The Court, however, held, "There is evidence that the usefulness of the right hand had been permanently destroyed." The Court affirmed an award of workmen's compensation benefits.

In the case of *Curran v. Walter E. Knipe and Sons, Inc.,* 185 Pa. Superior Ct. 540, 138 A. 2d 251 (1958), the cases holding that the loss of use means that the injured member has become useless in any employment for which the claimant is mentally and physically qualified were held to have been overruled. The Court ruled that: "The test to be applied is whether the claimant has suffered 'the permanent loss of use of the injured member for all practical intents and purposes.' This is not the same test as the 'industrial use' test although the two would often bring the same result if applied in particular cases. Generally, the 'all practical intents and purpose' test requires a more crippling injury than the 'industrial use' test in order to bring the case under section 306(c) supra. However, it is not necessary that the injured member of the claimant be of absolutely no use in order for him to have lost the use of it for all practical intents and purposes." 185 Pa. Superior Ct. at 547, 138 A. 2d at 255.

In the recent case of *Hershey Estates v. Workmen's Compensation Appeal Board*, 9 Pa. Commonwealth Ct. 470, 473, 308 A. 2d 637, 639 (1973), this Court dealt with a claim for the specific loss of use of an eye which was not entirely destroyed. We held that "continued employability and earnings" was not the test to be applied and that the correct test is that of "whether the injured eye was lost for all practical intents and purposes, not whether the claimant in fact has vision in the injured eye."

We have reviewed this entire record very carefully and conclude that there is sufficient substantial evidence to support the findings of the referee that the injury sustained by Wall has caused a permanent loss of use of his right hand for all practical purposes. This is not a case of even the slightest suspicion of a malingering employe falsely claiming benefits for the injuries he sustained. Here we have an employe who, after having suffered the excruciating pain of amputation and mutilation of his right hand, returned to work for his employer, accepting different work at lesser pay and performing that work as best he could in spite of the trying experiences of pain and cosmetic embarrassment. As we read the Workmen's Compensation Act, an employe who struggles through these traumatic experiences and attempts to pick up the pieces of his life by continuing his employment should not be penalized, as the employer in this case argues, because he had *some* use of the remaining portion of his hand. The test is whether the employe has suffered the permanent loss of the use of his hand for all practical intents and purposes. As we have said, there is substantial evidence in this case to support the referee's findings and conclusions, and we must reverse the Board's adjudication. We therefore

### ORDER

AND Now, this 26th day of February, 1974, it is hereby ordered that judgment bē entered on behalf of Marvin Wall and against Ward Candy Company and/or Travelers Insurance Company whereby they are directed to pay to Marvin Wall workmen's compensation benefits for the permanent loss of the use of his entire right hand at the maximum rate of $60.00 per week, beginning November 11, 1970, and continuing thereafter for a period of 195 weeks (175 weeks for the specific loss of the right hand and 20 weeks for the healing period) together with interest at the rate of six percent per annum on all deferred amounts of workmen's compensation payable hereunder, with credit to the defendants for all workmen's compensation already paid.