Richard L. Schuster, Petitioner *v.* Workmen's Compensation Appeal Board (Lee Tire & Rubber Company), Respondents.

Argued January 31, 1983, before Judges ROGERS, WILLIAMS, JR. and CRAIG, sitting as a panel of three.

*Roger S. Spalding*, with him *Stephen R. Bolden, Fell, Spalding, Goff & Rubin*, for petitioner.

*Charles S. Katz, Jr., Swartz, Campbell & Detweiler*, for respondents.

OPINION BY JUDGE ROGERS, May 2, 1983:

On October 5, 1973, Richard Schuster was engaged in the mill of his employer, Lee Tire and Rubber Company. Mr. Schuster, hired by Lee Tire as a white-collar office worker, had been sent into the mill along with other office workers in order to prevent a cessation in tire production due to an ongoing labor dispute with the employer's unionized employees. In his attempt to carry out the unaccustomed duties in the mill, which involved the manipulation of sheets and rolls of rubber weighing in excess of two hundred pounds and the division of these rolls from the machine of their creation by means of a knife, Mr. Schuster was severely injured by a wound to his wrist inflicted by the knife of a novitiate co-worker similarly engaged.

A claim petition was timely filed and at a hearing conducted by a referee on April 26, 1976, the claimant's treating physician, Dr. Victor Vare, a Board Certified specialist in orthopedic and hand surgery, testified that the claimant's injuries included the laceration of tendons and other structures and the complete severance at two points of the ulnar nerve. When asked to describe the function of the ulnar nerve, Dr. Vare testified that ''[t]he ulnar nerve supplies all of what we call the intrinsic musculature of the hand. All of the little small, fine tuning performing muscles are supplied by the ulnar nerve within the hand.'' In addition Dr. Vare testified that the ulnar nerve innervates certain muscle groups controlling specified gross movements of the fingers and thumb and the nerve further provides sensation from the whole of one finger, portions of other fingers, and areas on both the palm and back of the hand.

When asked to describe the extent of the claimant's disability resulting from his injury and believed by the physician to be permanent, Dr. Vare proceeded with a detailed description of each finger in turn and the extent to which its function and sensation had been curtailed by the accident.[1] This testimony is accurately represented by factual findings of the referee contained in his decision dated December 1, 1976 as follows:

10. The present condition of Claimant's little finger on his left hand resulting from the accident is one of deformity, described as ulnar claw. There is no sensation in the little finger and it has a loss of function.

11. The ring finger of Claimant's left hand has a mild deformity and has suffered a loss of

---

[1] These remarks were prefaced by the doctor's opinion that "to evaluate it on a finger by finger basis, it is really not fair because the hand is a team."

function. Sensation in the ring finger of the left hand has been lost on the ulnar or little finger half of the ring finger.

12. The intrinsic musculature of the middle or long finger of Claimant's left hand is not functioning.

13. The index finger of Claimant's left hand has lost the use of the abduction muscle used for the process of pinching, making Claimant's pinch weak.

14. Claimant's left thumb has lost innervation in one half of the three major intrinsic muscles of the thumb, making the thumb weak.

Direct examination of the claimant consisted primarily of his response to queries as to whether he could perform with his left hand specified common tasks. The claimant testified that he is right-handed and, therefore, has adapted somewhat to his disability but that the inability to move several fingers and limitations on the movements of others in combination with the overall loss of the ability to coordinate the left hand's movements and extensive loss of sensation render him unable to cut his food, to put toothpaste on his toothbrush, to shave, to tie his necktie, to drive a manual transmission automobile, to open the driver's side car door from the inside—in sum; to perform any task which requires use of the left hand or use of both hands in combination. The claimant further testified that his injured hand was the cause of considerable discomfort most of the time and, when exposed to cold, was even less useful and more painful than usual.

Cross-examination of the claimant appears to have left largely undisturbed the impression created by the direct testimony that the injured left hand is useless for virtually every task normally undertaken by the claimant. Instead, the employer's counsel repeatedly

posed irrelevant questions to the claimant as to why he could not instead perform the task at issue with his uninjured right hand.[2]

On the basis of this evidence the referee made the following factual findings and conclusion of law:

17. The Referee believes the Claimant's testimony that the Claimant has no sensation in the lower part of his left hand from the center of the ring finger down to the middle of the hand to the cut which was caused by the accident.

18. Claimant's left hand is sensitive to cold and heat and is slow and difficult to move. Additionally, in cold weather Claimant's left hand becomes raw and frail.

19. The Referee believes Claimant's testimony that he has serious trouble in performing the usual normal daily functions of life using his left hand.

---

[2] There is much questioning in the following vein which, although unobjected to, seems to us to be entirely irrelevant to the issue of the extent to which the claimant has by an injury at work lost the use of his left hand.

A. As far as the toothpaste, I haven't been able to hold—

Q. You mean that you can't hold it in your right hand?

A. I put the tooth paste in my mouth.

Q. Why don't you squeeze it with your right hand on the brush?

A. Well, it just doesn't stay in my hand.

Q. Can't you lay the brush down and squeeze it?

A. I guess.

The employer's argument seems to be that because the claimant was only temporarily in the mill when he was hurt and because he was regularly an office worker, he wasn't occupationally discommoded by the crippled condition of his hand. We rejected a similar contention in *Wall*. Section 306(c) of the Act provides compensation for specified injuries without reference to economic or industrial disability. *Workmen's Compensation Appeal Board v. Hartlieb*, 465 Pa. 249, 348 A.2d 746 (1976).

## CONCLUSIONS OF LAW

. . . .

3. Claimant has established by the preponderance of the evidence that the injury sustained by him in the accident in question has for all practical intents and purposes caused a loss of the use of his left hand.

Compensation was awarded in accordance with the terms of Section 306(c) of the Pennsylvania Workmen's Compensation Act, Act of June 2, 1915, P.L. 736, 77 P.S. §513(c) having to do with the specific loss of bodily members there enumerated.

The employer sought review of the referee's decision before the Workmen's Compensation Appeal Board which remanded the cause for further proceedings. Following the remand the referee again concluded that the claimant had, for all practical intents and purposes, lost the use of his left hand and, therefore, that the compensatory scheme of Section 306(c) of the Act was available. Again the employer appealed and the Board again remanded the cause for further proceedings; on this occasion with directions that the referee appoint and receive evidence from an impartial expert medical witness. A medical witness was appointed and additional evidence received and on the basis of this evidence the referee issued a third decision, dated September 29, 1980, in which it is found that:

8. The claimant did not lose the loss [sic?] of use of his left hand.

An appeal to the Board by the claimant was unavailing.

In argument before this Court the claimant first argues that the Board erred in remanding the cause to the referee following the referee's first decision in December, 1976. We agree and therefore do not reach any

of the issues raised with respect to the subsequent determinations of the workmen's compensation authorities.

The decision of a workmen's compensation referee is properly reversed and remanded for a new decision only in case the referee's findings are unsupported by substantial evidence of record and are disregarded by the Board or the referee's findings fail to resolve a necessary issue raised by the evidence or by the parties. Section 423 of the Act, 77 P.S. §854. *Forbes Pavilion Nursing Home v. Workmen's Compensation Appeal Board*, 18 Pa. Commonwealth Ct. 352, 336 A.2d 440 (1975). A remand may not properly be ordered where the referee's findings satisfactorily resolve the issues presented and are supported by substantial competent evidence. *Topps Chewing Gum, Inc. v. Workmen's Compensation Appeal Board*, 56 Pa. Commonwealth Ct. 425, 425 A.2d 57 (1981); *Stone Container Corp. v. Workmen's Compensation Appeal Board*, 50 Pa. Commonwealth Ct. 384, 413 A.2d 17 (1980); *Zurn Industries, Inc. v. Workmen's Compensation Appeal Board*, 45 Pa. Commonwealth Ct. 494, 406 A.2d 241 (1979); *Workmen's Compensation Appeal Board v. Morton*, 22 Pa. Commonwealth Ct. 577, 349 A.2d 773 (1976). Dissatisfaction by the Board with referee's assessment of the credibility of the witnesses and the weight of the evidence will not justify a remand. *Forbes.*

In our judgment, the evidence we have described above lends adequate support to the factual findings at issue. To be sure, evidence having a contrary import was also adduced including that of a physician who testified for the employer and who concluded his direct testimony with the following rather optimistic description of the claimant's disability:

He doesn't have quite the dexterity that you and
I have. I wouldn't want his injury, you see. I

don't think you would either. But I think all things taken into consideration, it is an excellent end result.

In addition, the Board was evidently troubled by the following expression of opinion by the claimant's surgeon, Dr. Vare:

Q: ... did you reach an opinion based upon reasonable medical certainty as to what you believe to be the percentage disability from an overall standpoint to Mr. Schuster's hand?

A: I have, sir.

Q: And what is that?

A: I came to a conclusion as to the degree of disability on the basis of really simple arithmetic. Inasmuch as there is [sic] three main nerves to the hand and he has the loss of one, I estimated his loss to be thirty-five percent in the hand.

Either of these conclusory statements of expert opinion, if credited and given such weight as to override contrary evidence, would have lent considerable support to a decision denying compensation for a specific loss. However, it is apparent that the referee disregarded these statements. We do not believe it was reversible error for the referee to disregard or give little weight to the conclusions of the employer's expert witness and to the claimant's physician's application of "simple arithmetic" to his description of the extent to which the claimant's severely injured hand remains useful.

Certainly, more than a scintilla of evidence to support the finding of a specific loss is provided by Dr. Vare's objective and detailed description of the nature, extent, and permanence of the injury in combination with the claimant's account of his attempted performance of daily activities, expressly credited by the referee, and corroborated by the referee's observation of

the hand and its mobility. On this basis the referee found that coordination in the hand was lost, that the function of two fingers was lost entirely leaving them deformed and useless, that the function of a third finger was diminished and the thumb weakened, that much of the sensation of the whole hand had been lost, and that pain often is experienced. The finding of a specific loss predicated on these well-supported findings is in accord with the many decisions dealing with the question of whether a specific loss was made out by proof of similar injuries. *See e.g. McGartland v. AMPCO-Pittsburgh Corp.*, 489 Pa. 205, 413 A.2d 1086 (1980) (Board reversed after disturbing the referee's finding that amputation of index, middle and ring fingers constituted specific loss of hand); *Camizzi v. E.T. Fraim Lock Company*, 151 Pa. Superior Ct. 3, 29 A.2d 425 (1942) (recovery of compensation for specific loss of hand affirmed on proof of loss of use of index and middle fingers and scarring of palmar surface); *Morrow v. J.S. Murray & Sons*, 136 Pa. Superior Ct. 277, 7 A.2d 109 (1939) (decision of workmen's compensation authorities reinstated where it was found that the loss of the claimant's index finger, a portion of the middle finger, and a stiffening of the ring finger and thumb constituted the specific loss of the hand); *Jones v. Heintz Manufacturing Co.*, 104 Pa. Superior Ct. 30, 159 A. 73 (1932) (recovery for specific loss of hand approved on proof of amputation of portions of the thumb, index, and middle fingers); *Hager v. Maryland Casualty Co.*, 87 Pa. Superior Ct. 159 (1926) (recovery for specific loss of hand approved on proof of amputation of thumb and two-thirds of the proximal metacarpal bone); *Frank Irey, Jr., Inc. v. Workmen's Compensation Appeal Board*, 67 Pa. Commonwealth Ct. 512, 448 A.2d 647 (1982) (specific loss of hand approved where some wrist bones were removed following an accidental fall and the forearm was fused di-

rectly to the remaining wrist bones and to the hand); *Westinghouse Electric Corporation v. Workmen's Compensation Appeal Board,* 33 Pa. Commonwealth Ct. 50, 381 A.2d 191 (1977) (recovery for specific loss of hand affirmed where a portion of the thumb and the whole of the index and middle fingers were amputated); *Gindy Manufacturing Co. v. Workmen's Compensation Appeal Board,* 32 Pa. Commonwealth Ct. 128, 378 A.2d 942 (1977) (recovery for specific loss of hand affirmed where index, middle, and ring fingers were amputated midway between first and second joint); *Ratchko v. Workmen's Compensation Appeal Board,* 31 Pa. Commonwealth Ct. 585, 377 A.2d 1012 (1977) (recovery for specific loss of hand affirmed on proof of amputation of two distal phalanges of each of four fingers); *Wall v. Workmen's Compensation Appeal Board,* 12 Pa. Commonwealth Ct. 12, 315 A.2d 656 (1974) (Board reversed and judgment entered for specific loss of hand where third and fourth fingers were amputated and bone structure damaged).

For example, in *Wall v. Workmen's Compensation Appeal Board,* where an industrial accident resulted in the amputation of the claimant's thumb and other damage to the bones of the hand and where the Board reversed the referee's finding of specific loss on the basis of evidence indicating that the claimant could still write with his injured hand and could still eat, clothe himself and stack boxes, Judge KRAMER wrote for this court:

We have reviewed this entire record very carefully and conclude that there is sufficient substantial evidence to support the findings of the referee that the injury sustained by Wall has caused a permanent loss of use of his right hand for all practical purposes. This is not a case of even the slightest suspicion of a malingering employe falsely claiming benefits for the

injuries he sustained. . . . As we read the Workmen's Compensation Act, an employe who struggles through these traumatic experiences and attempts to pick up the pieces of his life by continuing his employment should not be penalized, as the employer in this case argues, because he had *some* use of the remaining portion of his hand. The test is whether the employe has suffered the permanent loss of the use of his hand for all practical intents and purposes. As we have said, there is substantial evidence in this case to support the referee's findings and conclusions, and we must reverse the Board's adjudication. (Emphasis in the original.)

*Id.* at 19, 315 A.2d at 659. Finally, the Board, in its opinion accompanying the first order of remand, expressed the view that reconsideration of the cause by the referee was required because the referee had employed an erroneous statement of the standard applicable in specific loss cases. The standard for determining whether an injured member is properly compensated under Section 306(c) of the Act is as follows:

It is not necessary that the injured body part be of absolutely no use in order for the injured claimant to qualify for compensation. Rather, the proper test to be applied is whether claimant has suffered the permanent loss of use of the injured member "for all practical intents and purposes." Workmen's Compensation Appeal Board v. Hartlieb, 465 Pa. 249, 252, 348 A.2d 746, 750 (1976); Wall v. Workmen's Compensation Appeal Board, 12 Pa. Cmwlth. 12, 315 A.2d 656 (1974).

*McGartland* at 208 n. 2, 413 A.2d at 1088 n. 2. As we have indicated, the referee, after finding that the claimant's injuries are permanent, concluded with respect to this issue:

3. Claimant has established by the preponderance of the evidence that the injury sustained by him in the accident in question has for all practical intents and purposes caused a loss to him of the use of his left hand.

We disagree with the Board's assertion that the referee's placement of the clause "for all intents and purposes" indicates a misapprehension of the applicable legal standard. It is our judgment that the referee's statement was correct, that it does not differ from the rule expressed in *McGartland* and other cases, and that the referee's conclusion that the claimant lost the use of his hand for all practical intents and purposes is supported by substantial evidence.

Order reversed.

## ORDER

AND Now, this 2nd day of May, 1983, the order of the above-captioned matter is reversed and the order of the referee awarding benefits is reinstated.