## Camizzi *v.* E. T. Fraim Lock Company et al., Appellants.

4

Argued November 9, 1942.

Before KELLER, P. J.,
CUNNINGHAM, BALDRIGE, STADTFELD, RHODES, HIRT and
KENWORTHEY, JJ.

*Paul A. Mueller,* with him *Ralph M. Barley,* for appellants.

*Harney B. Lutz,* for appellee.

OPINION BY CUNNINGHAM, J.:

The contest in this workmen's compensation case relates to the extent and effect of certain accidental injuries suffered by Josephine R. Camizzi, claimant below and appellee herein, to her right hand while operating a milling machine in the course of her employment on June 2, 1939. Her employer and its insurance carrier, the appellants, concede she has permanently lost the use of her index and middle fingers and she has been paid compensation at the rate of $12 per week for a period of ninety weeks—the aggregate of the definite periods prescribed for these permanent injuries by §306(c) of our Workmen's Compensation Act, as reenacted and amended by the Act of June 4, 1937, P. L. 1552, 1563, 77 PS §513, in force at the time of the accident.[1]

The contention of the appellee is that her injuries have resolved themselves into the "permanent loss of the use of [her right] hand ...... for industrial purposes,"[2] entitling her to an award for two hundred weeks.

The issue arose under her petition for the review and modification of an award for the conceded period of ninety weeks. The referee dismissed the petition, but the board reversed his action and made an award for two hundred weeks, subject to a credit for payments already made; the court below dismissed the excep-

---

[1] The court below inadvertently assumed the later Act of June 21, 1939, P. L. 520, was applicable, but it did not become effective until July 1, 1939. As no conclusion was based upon any particular provision of the Act of 1939, as distinguished from the similar provision of the Act of 1937, the error was harmless.

[2] The phrase, "for industrial purposes" was inserted as one of the amendments to the statute by the Act of 1937, and has been omitted from the further reenacting and amending Act of June 21, 1939, P. L. 520, which became effective July 1, 1939, 77 PS §513.

tions of the employer and its carrier to the award by the board and entered judgment thereon in favor of the employee; this appeal followed.

A brief history of the case prior to the filing by appellee of her present petition is essential to an understanding of the procedural matters here involved. Shortly after the accident an open agreement was executed by the parties, providing for compensation for total disability at the rate of $12 per week. Payments were made under this agreement for total disability until October 6, 1939, when she endeavored to resume her employment but was unable to operate the type of machine by which she was injured; she was then transferred to another kind of work. Several months later she filed a petition to have the agreement reviewed so as to provide for payment under §306(c) for the permanent loss of the use of her hand. Before any hearing was had under this petition, appellants filed their petition under §413 for termination of the agreement upon the ground that appellee's disability had ceased and she was able to return to work on October 6, 1939—the date to which compensation had been paid. To this petition appellee filed an answer denying that her disability had ceased and averring that she was entitled to compensation under §306(c) for the permanent loss of the use of her hand. When these petitions and answers came on for hearing before the referee on March 27, 1940, the parties entered into a stipulation reading:

"Whereas the claimant has some injury to her thumb, her index finger and middle finger, as well as some scar tissue on the palmar surface of the hand and whereas, after consultation [with the medical experts and counsel for the parties] it was determined that the entire matter might be fairly compromised between the parties upon an award of total disability for the index and middle fingers as a fair lump settlement for

all of the claimant's injuries. It is, therefore, stipulated by counsel for both parties in interest that the referee shall enter such an award in favor of the claimant, giving credit for whatever payments may have already been made by the defendant insurance carrier."

Accordingly, the referee on March 29, 1940, entered an award directing that appellee be paid "compensation for the industrial loss of the use of the index and middle fingers of the right hand, at the rate of $12 per week, beginning from June [9], 1939, for a period of ninety weeks, to February 21, 1941, in the total sum of $1,080," subject to a credit for compensation already paid.

On February 3, 1941, prior to the expiration of the ninety weeks' period, appellee filed another petition which, in effect, was a petition for review and modification of the above award into one for the permanent loss of the use of the hand, i. e., into an award for two hundred weeks.

The petition was not aptly drawn; it contained an averment that the appellee's disability had increased "from the industrial loss of use of index and middle fingers of right hand to the loss of industrial use of right hand." It is true that appellee subsequently testified her hand was "worse" than it was at the time the stipulation was made, stating: "I get pain and my hand swells up and is black and blue and is cold all the time from here on (indicating whole length of arm) and I get pains back of my shoulder from the arm and under my arm and my elbow gets stiff." There was also testimony that appellee, although working upon a different type of machine, was "being paid at the rate of thirty-two cents per hour, the same rate that she received at the time of the injury." The referee and counsel for appellee seem to have been under the erroneous impression that appellee had the burden, under

her petition, of proving that her disability had increased and that her earning power had been diminished. This conception of the issue raised by the petition entirely overlooks the basis upon which compensation is payable under §306(c). If appellee has, in fact, permanently lost the use of her hand, the extent of her disability is entirely immaterial, for, as definitely stated by our Supreme Court in *Lente v. Luci,* 275 Pa. 217, 220, 119 A. 132, the "legislative mandate fixed the amount to be paid [for any of the permanent injuries compensable under §306(c)] without considering, but including, all incapacity to labor that may be connected therewith, whether such incapacity be total, partial or no incapacity at all." Nor, of course, does the fact that an employee entitled to compensation under that section is earning as much as, or even more than, at the time of the injury have any bearing upon any issue arising under that section.

Appellants in their answer denied there had been any increase in appellee's disability and averred they had discharged their entire liability to her by making payments of compensation, in accordance with the stipulation and award of March 29, 1940. The matter again came on for hearing before the referee on March 19, 1941. Counsel for appellants objected to the taking of any testimony upon the ground that the award sought to be reviewed was based upon the stipulation and had not been appealed from.

Appellants' answer and their objection to the presentation of testimony in support of the petition raise the first question of law here involved—the legal effect of the unappealed from award of March 29, 1940.

The referee overruled the objection and took the testimony of appellee and that of her medical witness, Dr. N. E. Bitzer, as well as the testimony of Dr. N. J. Kirk, on behalf of appellants. Upon the testimony taken at this hearing, and to which we shall refer later, the

referee made findings of fact, the eleventh of which reads: "From all the testimony in this case your referee is of the opinion and so finds as a fact that the condition of the claimant's hand is the same as it was on March 29, 1940, the date of the previous award in this matter." Appellee's petition for modification of that award was accordingly dismissed.

Upon her appeal from this order to the board, the action of the referee was reversed; his eleventh finding of fact and his conclusion of law were vacated and set aside. The board substituted its own finding of fact reading: "Eleventh: On all of the evidence and a view of the condition of the claimant's right hand we believe and find as a fact that the industrial use of the same has been permanently lost." An award was then entered by the board under §306(c) of compensation at the rate of $12 per week for two hundred weeks, subject to credit for the ninety weeks already paid.

The court below, in dismissing appellants' exceptions to that award and entering judgment thereon, concluded that the findings of the board were supported by "sufficient legally competent evidence" and correctly held that it was, therefore, without power to disturb them no matter what its own opinion might be with respect to the weight of the evidence.

At the oral argument complaint was made by counsel for appellants that, as indicated in its above quoted finding of fact, the board, while appellee's appeal from the action of the referee was under consideration by it, had viewed the condition of her hand, in the absence of counsel for appellants and without any notice to them of its intention to make such examination. It was proper for the board to view appellee's hand but it should not have been done in the absence of counsel for appellants, or at least until after notice had been given them of the intention of the board and an opportunity afforded them to be present.

It is not asserted that appellee's petition for a modification of the award of March 29, 1940, under the second paragraph of §413, was not timely, but it is earnestly contended that appellee, having failed to appeal from that award, cannot legally obtain any modification thereof upon any ground other than by proof of an increase in disability subsequent to its date. We cannot agree with this contention.

Upon the whole record it is clear that what appellee was seeking was a finding by the compensation authorities that the injuries described in the original agreement of June 16, 1939, and which provided for payment for total disability under §306(a), had resolved themselves into one of the permanent injuries compensable under §306(c)—"permanent loss of the use of a hand ...... for industrial purposes."

It must be borne in mind throughout this case, that all the proceedings subsequent to the execution of the original agreement stem back into that agreement, which had a potential life of five hundred weeks and longer if total disability should become permanent. If appellee's injuries resolved themselves into the permanent loss of the use of her hand, as she contends they did, the liability of appellants would be reduced to the period of two hundred weeks specified in §306(c), and payment of compensation for that period would be all that appellee could claim regardless of the extent of her disability. As we have seen, neither the extent of disability flowing from the accident, nor any increase or decrease therein is here material.

Upon the question of the legal effect of the award sought to be modified, it must be noted that in the stipulation upon which appellants rely reference is specifically made to "some injury to [appellee's] thumb" and to "some scar tissue on the palmar surface of her hand." The manner and extent in and to which these injuries affected the use of appellee's hand do not

seem to have been given due consideration when the stipulation was made. At least, they· were not mentioned in the award. Moreover, the award was not based upon any independent findings by the referee; its sole support is the stipulation.

In our opinion, these considerations render this award comparable to the award which we considered in the case of *Kilgore v. State Workmen's Insurance Fund et al.,* 127 Pa. Superior Ct. 213, 193 A. 294, and justify the application in this case of the principle there announced and discussed at length by President · Judge KELLER, namely, that such an award, though unappealed from, is final and conclusive only up to the date of its entry. There, as here, the award "was not based on independent findings of fact of the referee, but was rather an adoption and approval by him of an agreement entered into by the parties."

The remaining question of law involved is whether the court below erred in its conclusion that the record contains competent and substantial evidence supporting the findings of the board. The testimony of appellee herself was thus accurately summarized by the board in the course of its opinion:

"The claimant, contending that she has suffered the loss of the industrial use of the right hand, testified that she returned to machine work with the defendant but that she had to do everything with the left hand, the injured right hand being of no use except as a weight. She stated that (the loss of the middle and index finger having already been established) there was no feeling in the thumb and ring finger; that the hand swelled and got cold and black and blue and that she suffered reactions up the whole right arm to the shoulder. She indicated that she was taken off the first drill press job she was assigned to on her return to work because she did not have sufficient power in her right hand to put a lever straight down."

There was a conflict in the medical testimony upon the question whether the use of appellee's hand for industrial purposes had actually been lost. The appellee's medical expert was Dr. N. E. Bitzer. He made several examinations of her hand, the last just before the hearing. His testimony was to the effect that there is a scar running from the radial side of the thumb to the palm of the hand; loss of sensation in the thumb, index, middle and one-half of the third fingers; that the thumb seemed "unable to move out and grasp anything" and that voluntary flexion in the hand is limited to 15%. In reply to a question by the referee whether appellee "has lost the whole use of this hand," the witness answered: "A. She has lost the use of the hand so far as using it for any mechanical purposes, where she would have to flex it completely or guide by sensation of motion in the machine or anything she is doing, but, of course, she could use it as a weight. Q. She said she could use it to hold something down? A. Yes, sir."

Dr. N. J. Kirk, testifying for appellants, stated that in his opinion the condition of appellee's hand would not "improve over what it is at the present time," but that the use of the hand had not been entirely lost.

The board, as it had full power to do, expressly stated that it accepted the testimony of Dr. Bitzer, and added: "Furthermore, our own view of the hand has been particularly convincing. An additional material fact to be considered also is that on return to work the claimant was taken from a job requiring the use of the gripping power in her right hand and put on a job that she could do with her left hand only. We give no significance to the fact that the hand could be used as a weight, since the same use could be made of the stump of a wrist."

We think the testimony accepted by the board demonstrates that appellee met the full burden of proof

resting upon her under her petition and adequately supports the award.

Judgment affirmed.

PER CURIAM, December 14, 1942:

The foregoing opinion was written by Judge CUNNINGHAM before his death on December 6, 1942. It is now adopted and filed as the opinion of the Court.