Curran *v.* Walter E. Knipe and Sons, Inc. et al., Appellants.

Argued October 3, 1957. Before RHODES, P. J., HIRT, GUNTHER, WRIGHT, WOODSIDE, ERVIN, and WATKINS, JJ.

reargument refused February 11, 1958.

*Paul H. Ferguson,* with him *James F. Malone,* for appellants.

*S. Robert Levant,* with him *Markovitz, Stern & Shusterman,* for appellee.

Opinion by Woodside, J., January 21, 1958:

This is a workmen's compensation case in which the question is whether the board's finding that the claimant suffered the permanent loss of the use of his leg should be sustained.

The claimant, Frank J. Curran, broke his leg (fractured the right tibia and fibula) in the course of his employment with the defendant on January 30, 1952. He received workmen's compensation for total disability under an open agreement until October 21, 1953, when the defendant petitioned to modify the agreement alleging that Curran was no longer totally disabled. The referee, after hearing testimony, found as a fact that the claimant was still totally disabled, and dismissed the petition to modify. Upon appeal by the defendant, the Workmen's Compensation Board affirmed the findings of the referee, and on September 7, 1955, dismissed the appeal.

On October 24, 1955, the defendant filed another petition to modify, this time alleging that the claimant's injury had finally resulted in the loss of the use of his right leg. The referee found as a fact that "the claimant now suffers industrial loss of use of his right leg as a result of the accident." Upon appeal by the claimant to the board, it amended the above finding of the referee by deleting "industrial", and concluded that the claimant should be awarded compensation for the loss of use of his right leg. As this award limited the claimant's compensation to 215 weeks from February 7, 1952, instead of the longer period for which he might have received compensation for total or partial disability, he appealed the order to the Court of Common Pleas No. 2 of Philadelphia. That court first sustained the appeal and reversed the order of the board, and then amended its order and remitted the record to the board. The defendant appealed to this Court.

To understand the problem here involved we must examine section 306(c) of the Workmen's Compensation Act, 77 PS §513, and see how it differs from paragraphs (a) and (b) of the same section.

The relevant parts of paragraph (c) are: "For all disability resulting from permanent injuries of the following classes, the compensation shall be exclusively as follows: . . . For the loss of a leg, sixty-six and two-thirds per centum of wages during two hundred and fifteen weeks . . .

". . . Permanent loss of the use of a hand, arm, foot, leg, eye, finger, or thumb, great toe, or other toe, shall be considered as the equivalent of the loss of such hand, arm, foot, leg, eye finger, or thumb, great toe or other toe."

Paragraph (a) of section 306 (77 PS §511) relates to total disability, and paragraph (b) relates to partial disability (77 PS §512) while paragraph (c), supra, relates to the compensation for permanent injuries to certain specified parts of the body. The capacity to work is involved in the compensation payable under paragraphs (a) and (b), but not in the compensation payable under paragraph (c); in it the right to compensation is measured by the extent of the injury. The legislature fixed the amount to be paid for the injuries described in paragraph (c) without considering, but including, all incapacity to labor that may be connected therewith, whether such incapacity be total, partial or no incapacity at all. The compensation allowed in paragraph (c) is restricted by precise language, regardless of the fact that a permanent injury might otherwise affect capacity to work. *Lente v. Luci,* 275 Pa. 217, 220, 119 A. 132 (1922); *Camizzi v. E. T. Fraim Lock Co.,* 151 Pa. Superior Ct. 3, 8, 10, 29 A. 2d 425 (1942).

It is to be noted that the defendant first petitioned to modify by alleging that the claimant no longer suffered total disability. At the hearing on that petition it attempted to establish partial disability. Instead of appealing from the board's order on that petition, the defendant filed another petition alleging that the claimant's injury had finally resulted in the permanent loss of use of his right leg. The claimant contends that by failing to appeal from the order of the board on the first petition, the defendant lost its right to litigate the question raised in the second petition.

The answer to this contention is that the questions raised in the two petitions are not only different questions, but also depends upon different determinations. Loss of wages and capacity to work are involved in the question raised in the first petition, but they are not involved in the question raised in the second petition. It is possible for one to be totally disabled by a leg injury, and still not have suffered the permanent loss of use of the leg. It is also possible to have suffered the permanent loss of use of the leg and not be totally disabled. What was litigated on the first petition was the extent of the disability. The defendant, and the claimant if it should happen to be to his advantage, are entitled to have determined whether or not the claimant has lost the permanent use of his leg. This question had never been considered by the referee or the board until they acted upon the second petition.

The burden is upon the defendant to support the allegations of its petition to modify. He must establish by a fair preponderance of the evidence that the claimant has suffered the permanent loss of the use of his leg. *Monarko v. Culmerville Coal Co.*, 159 Pa. Superior Ct. 126, 47 A. 2d 295 (1946); *Snyder v. Hoffman*, 159 Pa. Superior Ct. 392, 48 A. 2d 78 (1946).

Whether the defendant has met this burden is a question of fact for the referee and the board and not for the court. A court is not permitted to weigh the evidence or to substitute its findings for those of the compensation authorities if there is legally competent evidence to support them. *Savolaine v. Matthew Leivo & Sons*, 131 Pa. Superior Ct. 508, 510, 200 A. 243 (1938); *Flood v. Logan Iron & Steel Co.*, 145 Pa. Superior Ct. 206, 20 A. 2d 792 (1941); *McClemens v. Penn Auto Parts*, 181 Pa. Superior Ct. 542, 544, 124 A. 2d 623 (1956).

The question for us, as it was for the court below, is, therefore, not what we would find from the evidence if sitting as a fact finding tribunal, but whether the finding of the permanent loss of the use of the leg is supported by competent evidence. *Savolaine v. Matthew Leivo & Sons*, supra, and *McClemens v. Penn Auto Parts*, supra. As the board found for the defendant we must view the evidence in the light most favorable to the defendant and give it the benefit of all inferences reasonably deducible therefrom. *Rice v. Public Meat Market*, 166 Pa. Superior Ct. 328, 329, 70 A. 2d 443 (1950).

Before considering this, it is advisable to examine the test to be applied in determining the "permanent loss of the use" of an injured member of claimant's body. The legislature and courts have vacillated concerning this test. It has been said that the test to be applied is whether the injured member "has become useless in any employment for which (the claimant) is mentally and physically qualified." *Rice v. Public Meat Market*, supra; *Morrow v. James S. Murray & Sons*, 136 Pa. Superior Ct. 277, 282, 7 A. 2d 109 (1939); *Corniak v. Cohen*, 150 Pa. Superior Ct. 140, 146, 27 A. 2d 560 (1942); *Zellner v. Haddock Mining Company*, 139 Pa. Superior Ct. 16, 10 A. 2d 918 (1940).

Ignoring the statutory distinction between the first two paragraphs and the third paragraph of section 306, this rule was first pronounced in *Chovic v. Pittsburgh Crucible Steel Co.,* 71 Pa. Superior Ct. 350, 353 (1919) which was decided before *Lente v. Luci,* supra, 275 Pa. 217, 119 A. 132 (1922). The legislature adopted this rule in 1937 and it was the correct test for compensable injuries occurring between January 1, 1938 and July 1, 1939 during which time the Act of June 4, 1937, P. L. 1552 was effective. That act inserted into section 306(c) the phrase "for industrial purposes", so that it read "Permanent loss of the use of a . . . leg . . . for industrial purposes, shall be considered as the equivalent of the loss of such . . . leg . . ." The Act of June 21, 1939, P. L. 520, removed the phrase "for industrial purposes", so that in this respect the section was in the same form that it was prior to the Act of 1937, supra. See *Criner v. McKee Glass Co.,* 162 Pa. Superior Ct. 627, 629, 60 A. 2d 595 (1948). The case of *Camizzi v. E. T. Fraim Lock Co.,* supra, 151 Pa. Superior Ct. 3, 12, 29 A. 2d 425 (1942), involved an industrial injury when the amendment of 1937 was the law, and the court there properly referred to the claimant's permanent loss of the use of her hand "for industrial purposes".

Apparently following the *Chovic* case, supra, the courts applied "the industrial use" interpretation to some cases occurring both before and after the period when the legislature directed it to be applied.

The correct test to determine whether a claimant is entitled to compensation under section 306(c) is whether the claimant has suffered the permanent loss of use of the injured member for all practical intents and purposes. *Diaz v. Jones & Laughlin Steel Corp.,* 155 Pa. Superior Ct. 177, 182, 38 A. 2d 387 (1944); *Wildman v. Pa. Dept. of Highways,* 157 Pa. Superior

Ct. 301, 303, 43 A. 2d 342 (1945); *Criner v. McKee Glass Co.,* supra, 162 Pa. Superior Ct. 627, 629, 60 A. 2d 595 (1948). This is now settled judicial construction. *Stachowski v. Incorporated Real Estate Investors,* 174 Pa. Superior Ct. 152, 154, 100 A. 2d 140 (1953).

The cases holding that the loss of use means that the injured member has become useless in any employment for which the claimant is mentally and physically qualified have been overruled by *Stachowski v. Incorporated Real Estate Investors,* supra.

The test to be applied is whether the claimant has suffered "the permanent loss of use of the injured member for all practical intents and purposes." This is not the same test as the "industrial use" test although the two would often bring the same result if applied in particular cases. Generally the "all practical intents and purpose" test requires a more crippling injury than the "industrial use" test in order to bring the case under section 306(c) supra. However, it is not necessary that the injured member of the claimant be of absolutely no use in order for him to have lost the use of it for all practical intents and purposes. For example, in *Criner v. McKee Glass Co.,* supra, 162 Pa. Superior Ct. 627, 60 A. 2d 595 (1948), it was held that the claimant was entitled to compensation for the permanent loss of the use of his left eye, even though it appeared that were he to lose the use of his right eye he would have vision in his damaged left eye. See also *Stachowski v. Incorporated Real Estate Investors,* supra, 174 Pa. Superior Ct. 152,

The evidence here establishes an injury very similar to that of the claimant in *Thatcher v. Weinstein,* 156, 100 A. 2d 140 (1953), and *Thatcher v. Weinstein,* 154 Pa. Superior Ct. 368, 35 A. 2d 549 (1944). lar to that of the claimant in *Thatcher v. Weinstein,* supra, where it was held that there was a loss of use

of the leg requiring compensation to be paid under paragraph (c) instead of total disability under paragraph (a) of section 306.

The claimant here is 62 years old. His injury was confined to the leg. He testified that since he suffered the fracture, he has not been able to move around without the assistance of a cane because his leg "would creak"; the "leg goes one way and the knee the other . . ." "[creating] a state of unbalance all the time". He suffered pain, even when in bed. He could not sit for any appreciable length of time without getting up to flex his muscles and exercise. Dr. Wieder testified the claimant had some use of the leg. Dr. Tomasco said he had no usefulness, except that he was able to stand on it, and that the use of it was lost even with a brace.

Dr. Harold Lefkoe, testifying for the claimant, admitted that "if this man had his leg amputated and was properly fitted and could use an artificial appliance, he'd be much better off than he is today".[1]

In the eye cases cited above, it was determined that the employees had lost the use of the injured eyes even though the claimants were better off with their injured eyes than without them. In the case before us there is testimony that the claimant would be better off without the leg than with it. This is evidence from which the board could find that the claimant permanently lost the use of his leg for all practical intents and purposes.

There is evidence from which the board might have found that the claimant did not lose the use of his leg for all practical intents and purposes. There was evi-

---

[1] Although it has no bearing on our determination of this case, it is a matter of interest that this unfortunate claimant fell and again broke his right leg, and that it was amputated on August 28, 1957.

dence he could stand on it, and with the use of a brace and cane he could walk on it for a short distance, and there was medical testimony that he had some use of the leg. But, as has been said many times, it is not for the court to weigh the testimony and determine the facts.

We must consider only whether there is sufficient credible evidence to support the finding of the board. If the board believed the testimony that the claimant would have been better off with the leg amputated, it could properly find that he had lost the use of the leg for all practical intents and purposes. There was sufficient credible evidence to support the board's finding.

The order of the court below is reversed, and the order of the Workmen's Compensation Board reinstated.