DECISION IN MANDAMUS
{¶ 1} Relator, Carl J. Sterwerf, has filed an original action requesting that this court issue a writ of mandamus ordering respondent, Industrial Commission of Ohio, to vacate its order denying his motion for compensation, pursuant to R.C. 4123.57(B), for alleged loss of use of the second, third, fourth, and fifth fingers of his left hand. *Page 2 
 {¶ 2} This matter was referred to a magistrate of this court pursuant to Civ.R. 53(C) and Loc.R. 12(M) of the Tenth District Court of Appeals. On September 12, 2006, the magistrate issued a decision, including findings of fact and conclusions of law, recommending that this court deny relator's request for a writ of mandamus. (Attached as Appendix A.) No objections have been filed to that decision.
 {¶ 3} Based upon an examination of the magistrate's decision and an independent review of the evidence, and, finding no error of law or other defect on the face of the magistrate's decision, this court adopts the magistrate's decision as our own, including the findings of fact and conclusions of law contained therein. In accordance with the magistrate's recommendation, relator's request for a writ of mandamus is hereby denied.
Writ denied.
 SADLER, P.J., and FRENCH, J., concur. *Page 3 
 APPENDIX A MAGISTRATE'S DECISION {¶ 4} In this original action, relator, Carl J. Ste[r]werf, requests a writ of mandamus ordering respondent Industrial Commission of Ohio ("commission") to vacate its order denying his April 12, 2004 motion for R.C. 4123.57(B) compensation for the alleged loss of use of the second, third, fourth and fifth fingers of his left hand.]
 Findings of Fact: *Page 4 
 {¶ 5} 1. On October 14, 2002, relator sustained an industrial injury while employed as a meat cutter. On that date, his knife slipped and entered his left forearm between the elbow and wrist on the volar surface. Relator was taken to the University of Cincinnati Hospital where he had surgery to repair the lacerations. The industrial claim is allowed for "injury ulnar nerve left; open wound left forearm; injury ulnar vessels left" and is assigned claim number 02-859607, which is a state fund claim.
 {¶ 6} 2. On September 4, 2003, relator was examined by orthopedic surgeon, Malcom A. Meyn, Jr., M.D., on behalf of the Ohio Bureau of Workers' Compensation ("bureau"). Dr. Meyn reported:
 It is my opinion that Mr. Sterwerf has an ulnar nerve injury to the left forearm, an ulnar artery injury and open laceration of the mid forearm, and contractures of the fourth and fifth fingers and clawing of the other digits. It is my opinion that he had not shown any changes in his condition in the past several months and it [is] now at maximum medical improvement.
 Mr. Sterwerf cannot return to his regular job because of the stiffness encountered in his hand and his inability to do any type of manual work with the left hand.
 Mr. Sterwerf's functional limitations include the following: He cannot use his hand in a repetitive fashion. He has to work with the hand pronated. He can pick up objects only with his thumb and long finger and does this from the side of the digits, not the palmar surfaces. He is incapable of using power tools because of weakness in the left hand. Mr. Sterwerf can essentially use his left hand only as a helper hand. It is my opinion that Mr. Sterwerf will be unable to be gainfully employed in any remunerative employment.
 {¶ 7} 3. On September 30, 2003, the bureau moved to terminate temporary total disability ("TTD") compensation based upon Dr. Meyn's report. *Page 5 
 {¶ 8} 4. Following a November 10, 2003 hearing, a district hearing officer ("DHO") issued an order terminating TTD compensation based upon a finding that relator had reached maximum medical improvement ("MMI"). The DHO relied upon Dr. Meyn's report.
 {¶ 9} 5. On November 13, 2003, citing Dr. Meyn's report, relator moved for R.C. 4123.57(B) scheduled loss compensation for the alleged total loss of use of his left hand.
 {¶ 10} 6. Relator's November 13, 2003 motion prompted the bureau to have relator examined by Alan R. Kightlinger, M.D., who specializes in hand surgery. The examination occurred on December 8, 2003. Dr. Kightlinger wrote:
 EXAMINATION: He has a "Y" shaped forearm scar in the middle third. There is some tethering of the skin above the scar with range of motion of the fingers. He has gross atrophy of the first dorsal interosseous and at the intermetacarpal interosseous muscles. There is a clawing of the ulnar three digits with fixed contractures at the PIP joints. The small finger PIP joint range of motion is 50° to 110 [degrees], the ring finger 50° to 110 [degrees], the middle finger PIP is 10° to 110°, the index finger is 0°to 110.° All the other digits and joints have full unrestricted active range of motion. The grip strength is markedly diminished being 90 pounds on the right and 35 pounds on the left. Pinch strength on the right is 18 pounds [and] on the left [it is] 7 pounds. He has intrinsic motor loss and cannot abduct or adduct digits 2-3-4-5. He has weak adduction of the thumb. There is a negative Fromet sign. There is a positive Tinel sign of the distal third of the forearm as far as the mid metacarpal level for paresthesias into the ring and small fingers. Two point discrimination is 16 or greater in the ulnar two digits. Median and radial nerve sensation and motor function are intact. There is no loss of wrist strength or range of motion. He is able to flex the digits into the palm of the hand and touch the distal flexor crease. He is able to oppose the thumb to the base of the 5th digit. When he pinches things he does so in the key pinch fashion rather than pulp to pulp. *Page 6 
 DISCUSSION AND CONCLUSIONS
 It is my opinion that he does not have total loss of use of function of the left hand. One of the three nerves has been severely compromised. He still has a very useful sensation and motor function on the radial side of the hand and pain is not an issue. He certainly has function which far exceeds an amputation or prosthetic hand, even though it is significantly diminished.
 The percentage of impairment is based on complete ulnar nerve lesion above the mid forearm. Using table 16/15 page 492 I conclude that he has maximum sensory and motor loss equivalent to 50% of the upper extremity impairment. I combine this with loss of motion in the middle, ring and small fingers which comes to 73% impairment of the upper extremity, 52% of the body as a whole.
 {¶ 11} 7. Following a February 6, 2004 hearing, a DHO issued an order denying relator's motion for compensation for loss of use for the left hand. The DHO relied exclusively upon Dr. Kightlinger's report.
 {¶ 12} 8. Relator administratively appealed the DHO's order of February 6, 2004.
 {¶ 13} 9. Following a March 24, 2004 hearing, a staff hearing officer ("SHO") issued an order affirming the DHO's order of February 6, 2004. The SHO's order states:
 Dr. Kightlinger advised that the injured worker does not have a total loss of function of the left hand. He further advised that the injured worker has useful sensation and motor function on the radial side of the hand and pain is not an issue. He further advised that the injured worker has function which exceeds an amputation or prosthetic hand even though it is significantly diminished.
 {¶ 14} 10. On April 21, 2004, another SHO mailed an order refusing relator's administrative appeal from the SHO's order of March 24, 2004.
 {¶ 15} 11. Earlier on April 12, 2004, citing Dr. Meyn's September 4, 2003 report and Dr. Kightlinger's December 8, 2003 report, relator moved for R.C. 4123.57(B) *Page 7 
scheduled loss compensation for the alleged loss of use of the second, third, fourth, and fifth fingers of his left hand.
 {¶ 16} 12. Relator's April 12, 2004 motion prompted the bureau to have relator examined by Judith M. Wachendorf, M.D., who specializes in physical medicine and rehabilitation. Dr. Wachendorf wrote:
 Response to Questions:
 1) In your opinion has allowed [injury] resulted in a total permanent loss of use or loss of use as a result of amputation or contracture due to scars, injuries or ankylosis, be specific? In my opinion injured worker has not sustained a loss of use of the left hand, particularly of the 2nd, 3rd, 4th, or 5th fingers of the left hand from the industrial injury. This is based on physical examination of the hand. There is no evidence of amputation. There is no evidence of ankylosis and [sic] although there is diminished range of motion in the PIP joints of the middle, ring and little fingers of the left hand. Therefore, the next questions is whether the contracture or decreased range of motion has resulted in loss of use. In my opinion these contracture[s] have not resulted in loss of use as he still has contributions from all fingers including the index, middle, ring and little fingers to contribute to grip strength in the left hand. His left grip strength although it is decreased by about a half compared to the right is still functionally able to be done with 60, 55, and 40 pounds on the left side and the middle ring and little finger contribute to 25 pounds of that grip strength. He has strength and active movement in all of his joints, even though he is unable to extend his middle, ring and little fingers fully. He has 4/5 strength in all the flexor muscles of the hand except for hand intrinsics. Therefore although there are limitations with certain activities in my opinion he has not sustained a loss of use of the 2nd, 3rd, 4th or 5th fingers or for that matter any of the fingers of the left hand, nor the thumb, nor the wrist. In my opinion these injuries are permanent and there is a permanent partial impairment based on the allowed diagnosis in the claim however in my opinion there is not a total loss or loss of use of any of the joints in the hand or the 2nd, 3rd, 4th, or 5th fingers, hand or wrist. *Page 8 
 {¶ 17} 13. Following a September 20, 2004 hearing, a DHO issued an order denying relator's motion. The DHO's order states:
 The injured worker's motion requests the payment of compensation pursuant to ORC 4123.57 for loss of use of the second, third, fourth and fifth fingers of the left hand.
 Based upon the reports of Dr. Wachendorf and Dr. Kightlinger, the District Hearing Officer finds that the injured worker is not entitled to the payment of the requested Loss of Use Compensation. The reports of Dr. Wachendorf and Dr. Kightlinger demonstrate that although the injured worker has reduced grip strength and diminished pinch strength, the injured worker retains substantial function of the left hand. Therefore, the injured worker's motion is denied.
 This order is based upon the reports of Dr. Wachendorf dated 08/05/2004 and Dr. Kightlinger dated 12/08/2003.
 {¶ 18} 14. Relator administratively appealed the DHO's order of September 20, 2004. Following a November 3, 2004 hearing, an SHO issued an order affirming the DHO's order. The SHO's order explains:
 The injured worker's C-86 motion filed 04/12/2004 requesting loss of use of the 2nd, 3rd, 4th and 5th fingers of the left hand pursuant to ORC 4123.57 is denied.
 The Staff Hearing Officer finds that for all practical purposes the injured worker has not lost the use of his fingers to the same effect and extent as if they had been amputated or otherwise physically removed. State ex rel. Gassmann, v. Idus. Comm. (1975) 41 Ohio St.2d 64
and State ex rel. Walker v. Indus. Comm. (1979), 58 Ohio St.2d 402.
 The Staff Hearing Officer finds that the medical evidence in file from Dr. Wachendorf (08/05/2004) and Dr. Kightlinger (12/08/2003) indicates that the injured worker has strength and active movement in all joints of his fingers. Testing indicated that the injured worker has functional grip strength of 60, 55 and 40 pounds in his left hand. Testing also indicted that the middle, ring and little finger contributed to 25 pounds *Page 9 
of grip strength and that all fingers contribute to the injured worker's grip strength.
 The injured worker testified at hearing that he is able to pick up, grasp and carry things with the fingers of his left hand although he indicated that he cannot carry things for a prolonged period of time. He also stated that he has lost the ability to use his fingers for fine manipulation.
 The Staff Hearing Officer finds that the injured worker has not lost the use of his 2nd, 3rd, 4th and 5th fingers pursuant to ORC 4123.57. Therefore, the injured worker's motion filed 04/12/2004 is denied.
 {¶ 19} 15. On December 4, 2004, another SHO mailed an order refusing relator's administrative appeal from the SHO's order of November 3, 2004.
 {¶ 20} 16. On January 9, 2006, relator, Carl Sterwerf, filed this mandamus action.
Conclusions of Law:
 {¶ 21} It is the magistrate's decision that this court deny relator's request for a writ of mandamus, as more fully explained below.
 {¶ 22} In State ex rel. Alcoa Bldg. Products v. Indus. Comm.102 Ohio St.3d 341, 2004-Ohio-3166, Robert R. Cox ("Cox") sustained an industrial injury which eventually required the amputation of his left arm just below the elbow. Cox received a scheduled loss award for his left hand amputation under R.C. 4123.57(B). Later, Cox moved under the same statute for loss of use of his left arm. In support, Cox offered the June 24, 2002 report of Dr. Robert H. Perkins, which stated:
 It is my belief that given the claimant's residual hypersensitivity, pain, and tenderness about his left distal forearm, that he is unable to use his left upper limb at all and he should be awarded for the loss of use of the entire left upper limb given his symptoms. He has been given in the past loss of use of the hand, but really he is unable to use a *Page 10 
prosthesis since he had had the amputation, so virtually he is without use of his left upper limb * * *
 {¶ 23} In Alcoa, the employer submitted a report from Dr. Koppenhoeffer. While Dr. Koppenhoeffer agreed that Cox had a functional loss of use of his left arm, the fact that some of the limb remained intact foreclosed, in his opinion, a finding of anatomic loss of use.
 {¶ 24} Also, Alcoa submitted a videotape showing Cox using his left arm to push open a car door and tucking a paper under that arm.
 {¶ 25} In Alcoa, relying on the report of Dr. Perkins, the commission awarded compensation for loss of use of the left arm. Alcoa, then petitioned for a writ of mandamus.
 In Alcoa, the Supreme Court of Ohio states:
 Scheduled awards pursuant to R.C. 4123.57(B) compensate for the "loss" of a body member and were originally confined to amputations, with the obvious exceptions of hearing and sight. In the 1970s, two cases — State ex rel. Gassmann v. Indus. Comm. (1975), 41 Ohio St.2d 64, 70 O.O.2d 157, 322 N.E.2d 660, and State ex rel. Walker v. Indus. Comm. (1979), 58 Ohio St.2d 402, 12 O.O.3d 347, 390 N.E.2d 1190-construed "loss," as similarly used in R.C. 4123.58, to include loss of use without severance. Gassmann and Walker both involved paraplegics. In sustaining each of their scheduled loss awards, we reasoned that "[f]or all practical purposes, relator has lost his legs to the same effect and extent as if they had been amputated or otherwise physically removed." Gassmann, 41 Ohio St.2d at 67, 70 O.O.2d 157, 322 N.E.2d 660; Walker, 58 Ohio St.2d at 403-404, 12 O.O.3d 347, 390 N.E.2d 1190. Alcoa urges the most literal interpretation of this rationale and argues that because claimant's arm possesses some residual utility, the standard has not been met. The court of appeals, on the other hand, focused on the opening four words, "for all practical purposes." Using this interpretation, the court of appeals found that some evidence *Page 11 
supported the commission's award and upheld it. For the reasons to follow, we affirm that judgment.
 Alcoa's interpretation is unworkable because it is impossible to satisfy. Walker and Gassmann are unequivocal in their desire to extend scheduled loss benefits beyond amputation, yet under Alcoa's interpretation, neither of those claimants would have prevailed. As the court of appeals observed, the ability to use lifeless legs as a lap upon which to rest a book is a function unavailable to one who has had both legs removed, and under an absolute equivalency standard would preclude an award. And this will always be the case in a nonserverance situation. If nothing else, the presence of an otherwise useless limb still acts as a counterweight — and hence an aid to balance — that an amputee lacks. Alcoa's interpretation would foreclose benefits to the claimant who can raise a mangled arm sufficiently to gesture or point. It would preclude an award to someone with the hand strength to hold a pack of cards or a can of soda, and it would bar-as here-scheduled loss compensation to one with a limb segment of sufficient length to push a car door or tuck a newspaper. Surely, this could not have been the intent of the General Assembly in promulgating R.C. 4123.57(B) or of Gassmann and Walker.
 Pennsylvania defines "loss of use" much as the court of appeals did in the present case, and the observations of its judiciary assist us here. In that state, a scheduled loss award requires the claimant to demonstrate either that the specific bodily member was amputated or that the claimant suffered the permanent loss of use of the injured bodily member for all practical intents and purposes. Discussing that standard, one court has written:
 "Generally, the `all practical intents and purpose' test requires a more crippling injury than the `industrial use' test in order to bring the case under section 306(c), supra. However, it is not necessary that the injured member of the claimant be of absolutely no use in order for him to have lost the use of it for all practical intents and purposes." Curran v. Walter E. Knipe Sons, Inc. (1958), 185 Pa.Super. 540, 547, 138 A.2d 251.
 This approach is preferable to Alcoa's absolute equivalency standard. Having so concluded, we further find that some evidence indeed supports the commission's decision. *Page 12 
 {¶ 26} Here the commission, through its SHO, denied relator's April 12, 2004 motion for loss of use of the second, third, fourth, and fifth fingers of his left hand. The reports from Drs. Wachendorf and Kightlinger were relied upon by the SHO in denying the motion. However, the SHO's explanation for her decision indicates that she was particularly persuaded by the results of Dr. Wachendorf's grip strength testing. Dr. Wachendorf found that relator has functional grip strength of 60, 55, and 40 pounds in the left hand and that the middle, ring, and little ring fingers contribute to 25 pounds of grip strength, and that all fingers of the left hand contribute to grip strength.
 {¶ 27} The SHO also found that relator "has strength and active movement in all joints," a finding that closely copies a finding in Dr. Wachendorf's report.
 {¶ 28} The SHO also relied upon relator's testimony. As noted in the order, relator testified that he is able to pick-up, grasp, and carry things with the fingers of his left hand although he indicated that he cannot carry things for a prolonged period of time. He also testified that he has lost the ability to use his fingers for fine manipulation.
 {¶ 29} According to relator, under Alcoa, Dr. Wachendorf's report fails to provide evidence upon which the motion can be denied because Dr. Wachendorf fails to explain how claimant can use his left fingers "for more than lifting a can of soda or a deck of cards." (Relator's brief at 4.)
 {¶ 30} Relator's argument is premised upon a misreading ofAlcoa because it erroneously suggests that the test for determining loss of use of one or more fingers of a hand is whether the claimant can do more than lift a can of soda or a deck of cards and that the commission is specifically required to address such a test in its order. *Page 13 
 {¶ 31} Here, the commission, through its SHO, was particularly persuaded by the results of Dr. Wachendorf's grip strength testing, by Dr. Wachendorf's finding of strength and active movement of all finger joints, and by relator's testimony. Nothing in Alcoa prohibits the commission from relying upon this evidence to deny the motion for loss of use of the fingers.
 {¶ 32} Relator also suggests that the commission abused its discretion by relying on Dr. Kightlinger's report because Dr. Kightlinger was never asked to render an opinion as to any loss of use of specific fingers of the left hand. As previously noted, the bureau was prompted to have relator examined by Dr. Kightlinger when relator moved for loss of use of the left hand. Relator's suggestion is disingenuous given the fact that relator cited to Dr. Kightlinger's report as evidence supporting his motion for loss of use of the fingers of the left hand.
 {¶ 33} Moreover, even if it can be argued that Dr. Kightlinger's report cannot be relied upon to deny relator's motion, the commission's order must nevertheless be upheld by this court given reliance upon Dr. Wachendorf's report.
 {¶ 34} Accordingly, for all the above reasons, it is the magistrate's decision that this court deny relator's request for a writ of mandamus.
s/s Kenneth W. Macke
KENNETH W. MACKE
 MAGISTRATE *Page 1