DECISION
{¶ 1} Relator, Deborah Hall, has filed an original action requesting that this court issue a writ of mandamus ordering respondent, Industrial Commission of Ohio, to vacate *Page 2 
its order denying relator's request for compensation for loss of her right arm, pursuant to R.C. 4123.57(B), and to order the commission to grant such compensation.
 {¶ 2} This matter was referred to a magistrate of this court pursuant to Civ. R. 53(C) and Loc. R. 12(M) of the Tenth District Court of Appeals. On December 20, 2006, the magistrate issued a decision, including findings of fact and conclusions of law, recommending that this court deny relator's request for a writ of mandamus. (Attached as Appendix A.) No objections have been filed to that decision.
 {¶ 3} Based upon an examination of the magistrate's decision and an independent review of the evidence, and finding no error of law or other defect on the face of the magistrate's decision, this court adopts the magistrate's decision as our own, including the findings of fact and conclusions of law contained therein. In accordance with the magistrate's recommendation, relator's request for a writ of mandamus is hereby denied.
Writ denied.
 BRYANT and TYACK, JJ., concur. *Page 3 
 APPENDIX A MAGISTRATE'S DECISION {¶ 4} Relator, Deborah Hall, has filed this original action requesting that this court issue a writ of mandamus ordering respondent Industrial Commission of Ohio ("commission") to vacate its order which denied relator's request for R.C. 4123.57(B) *Page 4 
compensation for loss of her right arm, and ordering the commission to grant that compensation.
Findings of Fact: {¶ 5} 1. Relator sustained a work-related injury on July 21, 2003, and her claim was originally allowed for the following conditions: "FRACTURE DISTAL RADIUS, CLOSED — RIGHT."
 {¶ 6} 2. On October 26, 2005, relator filed a motion requesting that her claim be additionally allowed for the following conditions:
 CONTRACTURES OF THE RIGHT RING FINGER, RIGHT THUMB, RIGHT INDEX FINGER, RIGHT LONG FINGER, AND RIGHT LITTLE FINGER; MALUNION DISTA RADIUS WITH RADIOCARPAL ARTHRITIS, RIGHT WRIST; RIGHT SHOULDER IMPINGEMENT; AND, RIGHT FROZEN SHOULDER.
Relator also requested an award, pursuant to R.C. 4123.57(B), for the total loss of use of her right arm.
 {¶ 7} 3. Relator's treating physician John W. Dietrich, M.D., submitted office notes from September 27, 2005 and February 8, 2006, reports dated August 3, 2005 and February 8, 2006, a C-9 dated September 28, 2005, and a letter dated September 2, 2005. Dr. Dietrich's office notes indicate that, in September 2005, relator showed evidence of right frozen shoulder as well as impingement. Dr. Dietrich noted that she abducted to 90 degrees and that she had flexion to 90 degrees. He noted weakness of the shoulder musculature and further that her hand/wrist exam showed that her wrist fusion was stable. In his February 8, 2006 office note, Dr. Dietrich noted that relator had limited range of motion of her shoulder. He also noted significant ankylosis of relator's *Page 5 
fingers and that she could oppose her thumb to her long finger. He further recommended that relator get a pain management evaluation. In his August 3, 2005 report, Dr. Dietrich opined that, if relator had not lost the total use of her hand, she had at best a 90 percent impairment of her right hand as of February 2004. In his September 2, 2005 letter, Dr. Dietrich opined that if relator's right arm was not completely impaired, she had very little residual function remaining.
 {¶ 8} 4. An independent medical examination was performed by Michael E. Ruff, M.D. In his November 28, 2005 report, Dr. Ruff noted that relator was right hand dominant and that she had six surgeries on her hand. Dr. Ruff agreed that relator's claim should be additionally allowed for the requested conditions. With regard to relator's arm, Dr. Ruff noted that she had limited range of motion of her right shoulder. Specifically, forward flexion to 30 degrees, abduction to 70 degrees, internal and external rotation to zero degrees. He noted further that relator had full unrestricted range of motion of her elbow and noted serious ankylosis of relator's fingers. Because relator was able to utilize her thumb and her elbow, and because she had some range of motion in her shoulder, Dr. Ruff concluded that relator did not have a loss of use of the entire right arm. Further, Dr. Ruff recommended that relator get treatment for her frozen shoulder condition as he opined that condition would improve.
 {¶ 9} 5. Relator underwent a functional capacity evaluation in July 2005 to determine whether she could return to her light-duty job as an overnight sales associate. Relator was evaluated by Janet Amadio, a therapist. Amadio noted that relator could manipulate objects in her right hand but that she could not do so with much speed. Relator also performed a simulated stocking task in which she was able to place 20 items *Page 6 
onto a shoulder-height shelf and then retrieve them. Amadio noted that relator was able to perform the task without difficulty or complaints of pain. Amadio noted that relator primarily used her right hand since the objects were very light and included items such as lipstick or other small cosmetic items which relator would be handling in her job. Amadio concluded that relator performed within the light-duty category which consists of lifting a maximum of 20 pounds and lifting/carrying up to ten pounds.
 {¶ 10} 6. Relator subsequently returned to her light-duty job working four days a week for four hours per day in a one-handed working capacity.
 {¶ 11} 7. Relator's motions were heard before a district hearing officer ("DHO") on February 15, 2006. The DHO granted the request that additional conditions be allowed in the claim and further found that relator's right hand was ankylosed and useless. As such, the DHO ordered that permanent partial disability compensation be granted for the loss of relator's right hand, pursuant to R.C. 4123.57, commencing February 27, 2004. The DHO relied upon Dr. Dietrich's reports, office notes, and his C-9. However, the DHO determined that relator did not have a loss of use of her right arm and disallowed that portion of the motion. The DHO relied upon the following:
 The Hearing Officer, in making this finding, has relied upon the following evidence: Dr. Ruff, employer's physician's finding indicating there was not a total loss of use of the right arm pursuant to Dr. Ruff's report of 11/28/2005.
 {¶ 12} 8. Relator appealed and the matter was heard before a staff hearing officer ("SHO") on March 29, 2006. The SHO affirmed the prior DHO order. As such, the SHO granted the request for additional claim allowances and found that relator had established *Page 7 
a loss of use of her right hand. The SHO determined that relator did not qualify for a loss of use of her right arm as follows:
 It is still further the order of the Staff Hearing Officer that claimant has failed to establish a loss of use of the right arm under Ohio Revised Code Section 4123.57. Therefore, claimant's request for compensation under Ohio Revised Code Section 4123.57 for loss of use of the right arm is denied.
 This portion of the order is based on the 11/28/2005 narrative report of Dr. Ruff who opines that claimant has not suffered a loss of use of the right arm; the 07/26/2005 functional capacities evaluation report of Dr. Amedio [sic] wherein function of the right arm is identified as limited, however, still minimally functional; the 02/08/2006 office note of Dr. Dietrich wherein he notes that claimant does have range of motion of the right shoulder, however, such motion is limited; and, claimant's demonstration of her range of motion in the right elbow as well as the right shoulder at hearing wherein she demonstrated complete range of motion of the right elbow with pain and range of motion of the right shoulder demonstrating an ability to raise the arm to shoulder level, however, with pain.
 {¶ 13} 9. Relator's further appeal was refused by order of the commission mailed February 25, 2006.
 {¶ 14} 10. Thereafter, relator filed the instant mandamus action in this court.
Conclusions of Law: {¶ 15} In order for this court to issue a writ of mandamus as a remedy from a determination of the commission, relator must show a clear legal right to the relief sought and that the commission has a clear legal duty to provide such relief. State ex rel. Pressley v. Indus. Comm.
(1967), 11 Ohio St.2d 141. A clear legal right to a writ of mandamus exists where the relator shows that the commission abused its discretion by entering an order which is not supported by any evidence in the record. State ex rel. *Page 8 Elliott v. Indus. Comm. (1986), 26 Ohio St.3d 76. On the other hand, where the record contains some evidence to support the commission's findings, there has been no abuse of discretion and mandamus is not appropriate. State ex rel. Lewis v. Diamond Foundry Co. (1987),29 Ohio St.3d 56. Furthermore, questions of credibility and the weight to be given evidence are clearly within the discretion of the commission as fact finder. State ex rel. Teece v. Indus. Comm. (1981),68 Ohio St.2d 165.
 {¶ 16} In this mandamus action, relator asserts that the commission abused its discretion by failing to apply the correct legal standard for loss of use. It is this magistrate's conclusion that relator has not demonstrated that the commission abused its discretion because the commission did apply the correct legal standard for loss of use and because the commission's award is supported by some evidence. Accordingly, as more fully explained below, it is the magistrate's decision that this court deny relator's request for a writ of mandamus
 {¶ 17} R.C. 4123.57(B) provides a schedule of compensation for the loss of enumerated body parts. Specifically, it provides for 175 weeks of compensation for loss of a hand. Further, it provides for 225 weeks of compensation for loss of an arm. In the present case, relator was awarded 175 weeks of compensation for loss of her right hand but was denied the additional compensation for loss of her right arm.
 {¶ 18} In State ex rel. Alcoa Bldg. Products v. Indus. Comm.,102 Ohio St.3d 341, 2004-Ohio-3166, at ¶ 10, the court set forth the historical development of scheduled loss of use awards under R.C. 4123.57(B). TheAlcoa court stated, as follows:
 Scheduled awards pursuant to R.C. 4123.57(B) compensate for the "loss" of a body member and were originally confined to amputations, with the obvious exceptions of hearing and *Page 9 
sight. In the 1970s, two cases — State ex rel. Gassmann v. Indus. Comm. (1975), 41 Ohio St.2d 64, * * * and State ex rel. Walker v. Indus. Comm. (1979), 58 Ohio St.2d 402 * * * — construed "loss," as similarly used in R.C. 4123.58, to include loss of use without severance. Gassmann and Walker both involved paraplegics. In sustaining each of their scheduled loss awards, we reasoned that "[f]or all practical purposes, relator has lost his legs to the same effect and extent as if they had been amputated or otherwise physically removed." Gassmann, 41 Ohio St.2d at 67[.] * * *
 {¶ 19} In Alcoa, the claimant sustained a left arm amputation just below the elbow. Continuing hypersensitivity at the amputation site prevented the claimant from ever wearing a prosthesis. Consequently, the claimant moved for a scheduled loss award for loss of use of his left arm.
 {¶ 20} Alcoa established through a videotape that the claimant could use his remaining left arm to push open a car door and to tuck paper under the arm. Nevertheless, the commission granted the claimant an award for the loss of use of his left arm.
 {¶ 21} This court denied Alcoa's complaint for a writ of mandamus and Alcoa appealed as of right to the Supreme Court of Ohio.
 {¶ 22} Affirming this court's judgment and upholding the commission's award, the Alcoa court explained, at ¶ 10-15, as follows:
 * * * Alcoa urges the most literal interpretation of this rationale and argues that because claimant's arm possesses some residual utility, the standard has not been met. The court of appeals, on the other hand, focused on the opening four words, "for all practical purposes." Using this interpretation, the court of appeals found that some evidence supported the commission's award and upheld it. For the reasons to follow, we affirm that judgment. *Page 10 
 Alcoa's interpretation is unworkable because it is impossible to satisfy. Walker and Gassmann are unequivocal in their desire to extend scheduled loss benefits beyond amputation, yet under Alcoa's interpretation, neither of those claimants would have prevailed. As the court of appeals observed, the ability to use lifeless legs as a lap upon which to rest a book is a function unavailable to one who has had both legs removed, and under an absolute equivalency standard would preclude an award. And this will always be the case in a nonseverance situation. If nothing else, the presence of an otherwise useless limb still acts as a counterweight — and hence an aid to balance — that an amputee lacks. Alcoa's interpretation would foreclose benefits to the claimant who can raise a mangled arm sufficiently to gesture or point. It would preclude an award to someone with the hand strength to hold a pack of cards or a can of soda, and it would bar — as here — scheduled loss compensation to one with a limb segment of sufficient length to push a car door or tuck a newspaper. Surely, this could not have been the intent of the General Assembly in promulgating R.C. 4123.57(B) or of Gassmann and Walker.
 Pennsylvania defines "loss of use" much as the court of appeals did in the present case, and the observations of its judiciary assist us here. In that state, a scheduled loss award requires the claimant to demonstrate either that the specific bodily member was amputated or that the claimant suffered the permanent loss of use of the injured bodily member for all practical intents and purposes. Discussing that standard, one court has written:
 "Generally, the `all intents and purposes' test requires a more crippling injury than the `industrial use' test in order to bring the case under section 306(c), supra. However, it is not necessary that the injured member of the claimant be of absolutely no use in order for him to have lost the use of it for all practical intents and purposes." Curran v. Walter E. Knipe Sons, Inc. (158), 185 Pa.Super. 540, 547, 138 A.2d 251.
 This approach is preferable to Alcoa's absolute equivalency standard. Having so concluded, we further find that some evidence indeed supports the commission's decision. Again, Dr. Perkins stated: *Page 11 
 "It is my belief that given the claimant's residual hypersensitivity, pain, and tenderness about his left distal forearm, that he is unable to use his left upper limb at all and he should be awarded for the loss of use of the entire left upper limb given his symptoms. He has been given in the past loss of use of the hand, but really he is unable to use a prosthesis since he has had the amputation, so virtually he is without the use of his left upper limb * * *."
 Accordingly, the commission did not abuse its discretion in awarding scheduled loss compensation for the loss of the left arm.
 {¶ 23} In this mandamus action, relator contends that the commission failed to apply the above standard in determining whether she was entitled to a scheduled loss award for the loss of use of her right arm. Relator contends that, if the commission would have applied the correct standard, the commission would have granted the scheduled loss of use award. Relator points to the September 2, 2005 letter of Dr. Dietrich who had opined that if relator's right arm was not completely impaired, she had very little residual function. Relator also points to that portion of Dr. Ruff's November 28, 2005 report wherein he indicated that claimant was currently working part-time in a limited duty position, essentially with no use of the right arm or hand. Dr. Ruff indicated that he believed these restrictions were appropriate and that they would be permanent. Based upon those two reports, relator contends that she was entitled to the scheduled loss of use award.
 {¶ 24} In denying her a scheduled loss of use award, the commission relied upon the February 8, 2006 office notes of Dr. Dietrich, the November 28, 2005 report of Dr. Ruff and the July 26, 2005 functional capacities evaluation completed by Amadio. As stated previously, Dr. Dietrich indicated that his exam of relator showed limited range of *Page 12 
motion of her shoulder. Dr. Ruff indicated that relator had limited range of motion of her right shoulder, that her claim should be additionally allowed for "frozen shoulder," and that he believed relator would benefit from having either a corticosteroid injection and/or surgical manipulation of her right shoulder. Furthermore, Amadio indicated that relator performed a simulated stocking task in which she was able to place 20 items onto a shoulder-height shelf and then retrieve them and that relator primarily used her right hand to do so. Amadio concluded that this activity fell within the light work category. Furthermore, the SHO asked relator to demonstrate her ability to move her right arm at the hearing. It is not an abuse of discretion for hearing officers to make such requests of a claimant at a hearing and it is not an abuse of discretion for the commission to rely upon that demonstration. In the present case, relator evidenced an ability to continue to use her shoulder and her arguments do not demonstrate that the commission abused its discretion in applying an incorrect standard.
Relator cites this court's decision in State ex rel. Sears Roebuck Co. v. Campos, Franklin App. No. 04AP-1266, 2005-Ohio-5700, as supporting her request for a writ of mandamus. It appears that relator argues that, because the hearing officer in the Sears Roebuck case went into greater detail demonstrating why the scheduled loss of use award was being granted, that the commission clearly abused its discretion in this case. This magistrate disagrees.
 {¶ 25} The commission is required to state the evidence upon which it relies and give a brief explanation for the decision. There is no requirement that the commission restate all of the findings in the doctors' reports upon which the commission is relying. In the present case, the commission cited the medical evidence upon which it relied and *Page 13 
gave a brief explanation of what those reports, as well as the demonstration relator performed at the hearing, indicated. Specifically, the SHO noted as follows:
 This portion of the order is based on the 11/28/2005 narrative report of Dr. Ruff who opines that claimant has not suffered a loss of use of the right arm; the 07/26/2005 functional capacities evaluation report of Dr. Amedio [sic] wherein function of the right arm is identified as limited, however, still minimally functional; the 02/08/2006 office note of Dr. Dietrich wherein he notes that claimant does have range of motion of the right shoulder, however, such motion is limited; and, claimant's demonstration of her range of motion in the right elbow as well as the right shoulder at hearing wherein she demonstrated complete range of motion of the right elbow with pain and range of motion of the right shoulder demonstrating an ability to raise the arm to shoulder level, however, with pain.
The magistrate finds that the above meets the requirements of the law.
 {¶ 26} At oral argument, counsel argued that State ex rel. Zamora v.Indus. Comm. (1989), 45 Ohio St.3d 17, should be applied thereby prohibiting the commission from relying on the report of Dr. Ruff to deny her loss of use of her shoulder. Counsel reasons that since the commission rejected Dr. Ruff's opinion that she did not have a loss of use of her hand, the commission could not thereafter rely upon the same report for the conclusion that she did not have a loss of use of her arm especially since Dr. Ruff's opinion was based on relator's ability to use her thumb.
 {¶ 27} The magistrate disagrees for the following reasons. First, even Dr. Dietrich noted that relator could use her thumb. Therefore, the only difference between this portion of Dr. Dietrich's report and Dr. Ruff's report is in their respective opinions regarding whether such limited motion of the thumb constituted loss of use of the hand. Second, Dr. Ruff also relied on the following: relator had normal motion in her elbow and her *Page 14 
shoulder condition could improve with treatment. Third, Amadio tested relator and found that she could use her right hand/arm to stock small items on a shelf. Fourth, relator physically demonstrated her ability to move her arm at the hearing when requested to do so. Fifth, although the commission did allow relator's claim for certain shoulder conditions, only Dr. Ruff indicated that this condition could improve. Relator's doctor did not render an opinion in this regard. As such, even if Dr. Ruff's ultimate opinion is removed from consideration, there was other evidence upon which the commission relied in rendering its decision.
 {¶ 28} On the date of oral argument, relator filed State ex rel.Crocker v. Indus. Comm., 111 Ohio St.3d 202, 2006-Ohio-5483, as supplemental authority. In Crocker, the claimant's treating physician had authored a report opining that claimant's allowed condition would improve. The commission rejected that opinion and found that claimant's allowed conditions had reached maximum medical improvement. Thereafter, in a new report, claimant's treating physician reiterated his opinion that claimant's condition would improve. This time, the commission accepted that opinion and denied claimant scheduled loss compensation as premature since his condition would improve. The court found that the principles of Zamora applied and held that the commission cannot accept the same doctor's opinion on one matter when the commission had previously rejected it on the same matter. Relator argues that because the commission rejected Dr. Ruff's opinion that she had sustained a total loss of use of her right hand, the commission could not, thereafter, accept Dr. Ruff's same report wherein he also opined that relator did not have a complete loss of use of her arm. For the reasons that follow, it is this magistrate's *Page 15 
conclusion that Zamora and Crocker do not bar the commission's reliance on Dr. Ruff's report.
 {¶ 29} First, the same issue is not involved. Whether or not relator suffered a total loss of use of her hand is a different issue from whether or not she suffered a total loss of use of her arm. Second, even relator's treating physician noted that she could use her thumb. As such, Dr. Ruff's physical findings were not in dispute; only his ultimate conclusion as to her loss of use of her hand was in dispute. Third, Dr. Ruff's conclusion that relator did not have a complete loss of use of her arm was not based exclusively on her ability to use her thumb. Dr. Ruff noted that she could use her elbow and that her shoulder condition could improve. At the time Dr. Ruff rendered this opinion, relator's claim had not yet been allowed. When asked, relator informed Dr. Ruff that her physician of record may want to pursue surgery focused on resolving the stiffness in her right shoulder. R.C. 4123.57
compensates a claimant for a loss that is permanent and Dr. Ruff's report is also some evidence that her shoulder condition has not reached maximum medical improvement.
 {¶ 30} Based on the foregoing, it is this magistrate's conclusion that relator has not demonstrated that the commission abused its discretion in denying her a scheduled loss of use award for the loss of use of her right arm and relator's request for a writ of mandamus should be denied. *Page 1